**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| AMERICAN MUNICIPAL POWER, INC., OLD DOMINION ELECTRIC COOPERATIVE, BLUE RIDGE POWER AGENCY, AND WABASH VALLEY POWER ASSOCIATION, INC. | ) | Case No. 25-1250 |
| Petitioners, | ) | |
| v. | ) | |
| FEDERAL ENERGY REGULATORY COMMISSION, | ) | |
| Respondent. | ) | |

**PETITION FOR REVIEW OF**
**AMERICAN MUNICIPAL POWER, INC.,**
**OLD DOMINION ELECTRIC COOPERATIVE,**
**BLUE RIDGE POWER AGENCY, AND**
**WABASH VALLEY POWER ASSOCIATION, INC.**

Pursuant to Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b) and Rule 15(a) of the Federal Rules of Appellate Procedure, American Municipal Power, Inc. ("AMP"), Old Dominion Electric Cooperative ("ODEC"), Blue Ridge Power Agency ("Blue Ridge"), and Wabash Valley Power Association, Inc. ("WVPA") (collectively, "Petitioners") jointly petition this Court for review of the following orders of the Federal Energy Regulatory Commission ("FERC"):

A. *Appalachian Power Co.*, "Order on Further Briefing, Rehearing, Compliance, and Motion to Lodge," Docket Nos. ER17-405-002, ER17-405-003, ER17-406-002, ER17-406-003, EL23-51-001, and

EL23-51-002, 191 FERC ¶ 61,238 (June 30, 2025) ("June 30 Order"); and

B. *Appalachian Power Co.*, "Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration," Docket Nos. ER17-405-004, ER17-406-004, and EL23-51-003, 192 FERC ¶ 62,126 (September 2, 2025) ("Denial Notice").

1. The Petitioners are an *ad hoc* group of membership organizations that are wholesale transmission customers of AEP East,[1] working to ensure that transmission service rates are just, reasonable, and not unduly discriminatory.

2. AMP is a non-profit Ohio corporation with members that include over 130 municipal electric systems in Indiana, Kentucky, Maryland, Michigan, Ohio, Pennsylvania, Virginia, and West Virginia, and a joint action agency in Delaware. AMP purchases transmission service from PJM at the AEP East transmission formula rate, on behalf of its members and on its own behalf.

3. ODEC is a not-for-profit power supply electric cooperative, organized and operating under the laws of the Commonwealth of Virginia and subject to Commission jurisdiction. ODEC supplies capacity and energy to its eleven-member distribution cooperatives, which are located within the control area of PJM and serve

---

[1] "AEP East" refers to (i) the AEP East Operating Companies (i.e., Appalachian Power Company; Indiana Michigan Power Company; Kentucky Power Company; Kingsport Power Company; Ohio Power Company; Wheeling Power Company), and (ii) the AEP East Transmission Companies (i.e., AEP Appalachian Transmission Company Inc.; AEP Indiana Michigan Transmission Company Inc.; AEP Kentucky Transmission Company Inc.; AEP Ohio Transmission Company Inc.; and AEP West Virginia Transmission Company Inc.).

approximately 600,000 retail customers in Virginia, Delaware and Maryland. ODEC is dependent on use of transmission facilities, including those in AEP East's transmission formula rate, to deliver both the output of ODEC's generation facilities located within PJM and power purchases from third party sellers to the load of ODEC's member distribution cooperatives.

4. Blue Ridge is a non-profit corporation created by its members to pursue joint action to obtain the most reliable and lowest cost wholesale electric power supplies possible for its members. Blue Ridge has eight member communities in Virginia, along with member Virginia Polytechnic Institute and State University.

5. WVPA is a not-for-profit generation and transmission electric cooperative serving twenty-one member distribution co-ops in Indiana and Illinois—who power approximately 285,000 retail customers. WVPA purchases transmission service from PJM at the AEP East transmission formula rate, on behalf of its members and on its own behalf.

6. The Commission's June 30 Order, in pertinent part, modified and set aside a directive in the Commission's January 18, 2024, order[2] regarding AEP East's[3] true-up calculations for the 2021 rate year. The June 30 Order accepted AEP

---

[2] *See Appalachian Power Co.*, Order on Formal Challenge and Complaint and Directing a Compliance Filing, 186 FERC ¶ 61,033 (January 18, 2024).

[3] "AEP East" refers to (i) the AEP East Operating Companies (i.e., Appalachian Power Company; Indiana Michigan Power Company; Kentucky Power Company;

East's interpretation of three retail Private Letter Rulings the Internal Revenue Service had issued on April 3,2024 to affiliates of AEP East,[4] finding that FERC's January 2024 Order's directive to exclude the protected NOLC ADIT adjustments would lead to a violation of the IRS's normalization rules, causing the loss of the ability to use accelerated depreciation for income tax purposes. Based on that interpretation, FERC set aside the January 2024 Order's directive to AEP East to exclude the adjustments to net operating loss carryforward ("NOLC") accumulated deferred income tax ("ADIT") adjustments, to the extent the adjustments pertain to book-tax timing differences related to net operating losses associated with accelerated depreciation (i.e., "protected" NOLC ADIT). A copy of the June 30 Order is provided herewith as Attachment A.

7. In their individual capacities and as part of an *ad hoc* coalition of transmission service customers, each of the Petitioners was a party to the proceedings before FERC resulting in the issuance of the June 30 Order and the Denial Notice. The Petitioners were aggrieved by the June 30 Order. The Petitioners

---

Kingsport Power Company; Ohio Power Company; Wheeling Power Company), and (ii) the AEP East Transmission Companies (i.e., AEP Appalachian Transmission Company Inc.; AEP Indiana Michigan Transmission Company Inc.; AEP Kentucky Transmission Company Inc.; AEP Ohio Transmission Company Inc.; and AEP West Virginia Transmission Company Inc.).

[4] The Private Letter Rulings are: (1) IRS PLR 105952-22 (March 8, 2024); (2) IRS PLR 107770-22 (March 8, 2024); and (3) IRS PLR 105951-22 (March 8, 2024).

timely and jointly requested rehearing of FERC's June 30 Order.

8. On September 2, 2025, the Denial Notice indicated that the Petitioners' rehearing request had been denied by operation of law and without ruling on the merits of the Petitioners' rehearing request.[5] The Denial Notice explained that FERC would address the substantive arguments set forth in the Petitioners' request for rehearing in a future order, consistent with the requirements of 16 U.S.C. § 825*l*(a). A copy of the Denial Notice is provided herewith as Attachment B.

9. The Petitioners hereby petition this Court seeking review of both the June 30 Order and the Rehearing Order on the grounds that the referenced orders are contrary to the Federal Power Act, are not the product of reasoned decisionmaking, and are arbitrary and capricious. The Petitioners respectfully request that the Court hold unlawful, vacate, enjoin, and set aside the June 30 Order and the Rehearing Order, and grant further relief as may be appropriate.

10. Venue in this Court is proper under Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b). The Petitioners are "aggrieved by…order[s] issued by [FERC]" and, in accordance with 16 U.S.C. § 825*l*(b), is authorized to "obtain review of such order…in the United States Court of Appeals for the District of

---

[5] *Appalachian Power Co.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, 192 FERC ¶ 62,126 (September 2, 2025) (Attachment B).

Columbia." This Petition is also timely under 16 U.S.C. § 825*l*(b) because it was filed within sixty days after of the rehearing request had been denied by operation of law.

11. In accordance with Rule 15(c) of the Federal Rules of Appellate Procedure, parties admitted to participate in the underlying agency proceedings have been served with a copy of this Petition for Review.

Respectfully submitted,

*/s/ Gerit F. Hull*
Gerit F. Hull
Deputy General Counsel
for Regulatory Affairs
American Municipal Power, Inc.
1111 Schrock Road, Suite 100
Columbus, OH 43229
(614) 540-1111
lmcalister@amppartners.org
ghull@amppartners.org

*/s/ Jason T. Gray*
Jason T. Gray
Lucy J. Gibbon
Duncan & Allen LLP
1730 Rhode Island Ave., NW
Suite 700
Washington, DC 20036
(202) 842-8197
jtg@duncanallen.com
ljg@duncanallen.com

*Attorneys for American Municipal Power, Inc.*

*/s/ Adrienne E. Clair*
Adrienne E. Clair
Thompson Coburn LLP
1909 K Street, NW
Suite 600
Washington, DC 20006
(202) 585-6900
aclair@thompsoncoburn.com

*Attorney for Old Dominion Electric Cooperative*

/s/ Jeremy L. Fetty
Jeremy L. Fetty
Parr Richey LLP
251 N. Illinois Street
Suite 1800
Indianapolis, IN 46204
(317) 269-2500
jfetty@parrlaw.com

*Attorneys for Wabash Valley Power Association, Inc.*

*/s/ F. Alvin Taylor*
F. Alvin Taylor
Allen R. O'Neil
MCCARTER & ENGLISH, LLP
1301 K Street, N.W.
Suite 1000 West
Washington, D.C. 20005
(202) 753-3400
ataylor@mccarter.com
aoneil@mccarter.com

*Attorneys for Blue Ridge Power Agency*

Dated at Washington, D.C. this 28th day of October, 2025.

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| AMERICAN MUNICIPAL POWER, INC., OLD DOMINION ELECTRIC COOPERATIVE, BLUE RIDGE POWER AGENCY, AND WABASH VALLEY POWER ASSOCIATION, INC. | ) | Case No. __________ |
| Petitioners, | ) | |
| v. | ) | |
| FEDERAL ENERGY REGULATORY COMMISSION, | ) | |
| Respondent. | ) | |

**RULE 26.1 DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of the Rules of this Court, Petitioners state as follows:

Petitioner American Municipal Power, Inc. ("AMP") is a non-profit Ohio corporation, with members that include over 130 municipal electric systems in Indiana, Kentucky, Maryland, Michigan, Ohio, Pennsylvania, Virginia, and West Virginia, and Ohio, and a joint action agency in Delaware. AMP provides wholesale energy supply and related services to its members. AMP issues no stock, has no parent corporation, and is not owned in whole or in part by any publicly held corporation.

Petitioner Old Dominion Electric Cooperative ("ODEC") is a not-for-profit power supply electric cooperative, organized and operating under the laws of the Commonwealth of Virginia. As such, ODEC is not a "nongovernmental corporate entity" subject to the requirements of Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1.

Petitioner Blue Ridge Power Agency ("Blue Ridge") is a non-profit corporation that negotiates and oversees wholesale electricity purchase arrangements for its members, which are load-serving entities that own and operate their own electric distribution systems to serve retail customers. Blue Ridge has eight member communities in Virginia, along with member Virginia Polytechnic Institute and State University. Blue Ridge issues no stock, has no parent corporation, and is not owned in whole or in part by any publicly held corporation.

Petitioner Wabash Valley Power is a not-for-profit generation and transmission electric cooperative serving an alliance of twenty-one member distribution cooperatives in Indiana and Illinois, serving more than 325,000 homes, schools and businesses. Wabash has no parent corporation and issues no stock, and therefore no publicly held corporation owns 10% or more of its stock.

Respectfully submitted,

*/s/ Gerit F. Hull*
Gerit F. Hull
Deputy General Counsel
for Regulatory Affairs
American Municipal Power, Inc.
1111 Schrock Road, Suite 100
Columbus, OH 43229
(614) 540-1111
lmcalister@amppartners.org
ghull@amppartners.org

*/s/ Jason T. Gray*
Jason T. Gray
Lucy J. Gibbon
Duncan & Allen LLP
1730 Rhode Island Ave., NW
Suite 700
Washington, DC 20036
(202) 842-8197
jtg@duncanallen.com
ljg@duncanallen.com

*Attorneys for American Municipal Power, Inc.*

*/s/ Adrienne E. Clair*
Adrienne E. Clair
Thompson Coburn LLP
1909 K Street, NW - Suite 600
Washington, DC 20006
(202) 585-6900
aclair@thompsoncoburn.com

*Attorney for Old Dominion Electric Cooperative*

*/s/ Jeremy L. Fetty*
Jeremy L. Fetty
Parr Richey LLP
251 N. Illinois Street - Suite 1800
Indianapolis, IN 46204
(317) 269-2500
jfetty@parrlaw.com

*Attorneys for Wabash Valley Power Association, Inc.*

*/s/ F. Alvin Taylor*
F. Alvin Taylor
Allen R. O'Neil
MCCARTER & ENGLISH, LLP
1301 K Street, N.W.
Suite 1000 West
Washington, D.C. 20005
(202) 753-3400
ataylor@mccarter.com
aoneil@mccarter.com

*Attorneys for Blue Ridge Power Agency*

Dated at Washington, D.C. this 28th day of October, 2025.

# <u>Attachment A</u>

*Appalachian Power Co.*, Order on Further Briefing, Rehearing, Compliance, and Motion to Lodge, 191 FERC ¶ 61,238 (June 30, 2025).

191 FERC ¶ 61,238
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners: Mark C. Christie, Chairman;
David Rosner, Lindsay S. See,
and Judy W. Chang.

| | | |
|---|---|---|
| Appalachian Power Company | Docket Nos. | ER17-405-002<br>ER17-405-003 |
| AEP Appalachian Transmission Company Inc. | | ER17-406-002<br>ER17-406-003 |
| American Municipal Power, Inc., et al.<br>v.<br>Appalachian Power Company et al., and<br>AEP Appalachian Transmission Company Inc., et al. | | EL23-51-001<br>EL23-51-002 |

ORDER ON FURTHER BRIEFING, REHEARING, COMPLIANCE, AND MOTION TO LODGE

(Issued June 30, 2025)

1. On January 18, 2024, the Commission granted in part, and denied in part, a formal challenge filed by American Municipal Power, Inc., Blue Ridge Power Agency, Indiana Municipal Power Agency, Mishawaka Utilities, Old Dominion Electric Cooperative, and Wabash Valley Power Association, Inc. (together, Joint Customers) to the annual informational filings of AEP East Transmission Companies[1] and AEP East Operating Companies[2] (together, AEP East)[3] that detail the true-up calculations of the charges for

[1] AEP Appalachian Transmission Company, Inc., AEP Indiana Michigan Transmission Company, Inc., AEP Kentucky Transmission Company, Inc., AEP Ohio Transmission Company, Inc., and AEP West Virginia Transmission Company, Inc.

[2] Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Ohio Power Company, and Wheeling Power Company.

[3] The AEP East Operating Companies and the AEP East Transmission Companies each have their own transmission formula rate templates and implementation protocols

the 2021 rate year.[4] On February 20, 2024, AEP East timely filed a request for rehearing of the Formal Challenge Order in Docket Nos. ER17-405-002, ER17-406-002, and EL23-51-001.

2. Pursuant to *Allegheny Defense Project v. FERC*,[5] the rehearing request filed in this proceeding may be deemed denied by operation of law. However, as permitted by section 313(a) of the Federal Power Act (FPA),[6] we are modifying the discussion in the Formal Challenge Order and setting aside the order, in part, as discussed below.[7]

3. In the Formal Challenge Order, the Commission also directed AEP East to submit a compliance filing,[8] and on April 4, 2024, AEP East filed its compliance filing in Docket Nos. ER17-405-003, ER17-406-003, EL23-51-002 (Compliance Filing). In this order, we accept in part, and reject in part, the AEP East Compliance Filing and direct AEP East to submit a further compliance filing within 60 days of the date of this order.

## I. <u>Background</u>

4. On May 25, 2022, AEP East Transmission Companies filed annual informational filings in Docket No. ER17-406-000 that detail the true-up calculations of the charges for the 2021 rate year under their transmission formula rates in the PJM Tariff.[9]

---

contained in Attachment H-14 and H-20, respectively, to the PJM Interconnection, L.L.C. (PJM) Open Access Transmission Tariff (Tariff). The Formula Rate consists of the formula rate templates and formula rate implementation protocols (Protocols), which are substantially the same for the AEP East Transmission Companies and AEP East Operating Companies.

[4] *Appalachian Power Co.*, 186 FERC ¶ 61,033 (2024) (Formal Challenge Order).

[5] 964 F.3d 1 (D.C. Cir. 2020) (en banc).

[6] 16 U.S.C. § 825*l*(a) (“Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.”).

[7] *Allegheny Def. Project*, 964 F.3d at 16-17.

[8] Formal Challenge Order, 186 FERC ¶ 61,033 at P 48.

[9] PJM, OATT ATT H-20A, OATT Attachment H-20A - AEPTCo (1.1.0) (Protocols); PJM, OATT ATT H-20B - Part I, OATT Attachment H-20B - AEPTCo -

5. On May 25, 2022, as revised on May 27, 2022, AEP East Operating Companies filed annual informational filings in Docket No. ER17-405-000 that detail the true-up calculations of the charges for the 2021 rate year under their transmission formula rates in the PJM Tariff.[10]

6. On March 8, 2023, Joint Customers filed a formal challenge and complaint regarding the formula transmission service rates that had been charged by AEP East for rate years 2021 and 2022 (Formal Challenge and Complaint). On March 14, 2023, Joint Customers refiled the Complaint in Docket No. EL23-51-000. In the Formal Challenge and Complaint, Joint Customers alleged that AEP East improperly: (1) changed methods for treating accumulated deferred income taxes (ADIT) related to net operating losses; (2) inappropriately included ADIT related to rate refunds in rate base; and (3) inappropriately included ADIT associated with contributions in aid of construction (CIAC) in the AEP East 2021 annual transmission revenue requirement.

7. On January 18, 2024, the Commission granted in part, and denied in part, the Formal Challenge and Complaint, and directed AEP East to submit the Compliance Filing.[11]

## II. <u>AEP East Request for Rehearing</u>

8. AEP East argues on rehearing that the Commission's determinations in the Formal Challenge Order will likely lead to a violation of the Internal Revenue Service (IRS) normalization rules, and the Commission's determinations are inconsistent with Commission precedent and policy. AEP East asserts that the Commission failed to address significant issues of material fact that remain. AEP East also argues that the Commission failed to address AEP East's argument that the inclusion of ADIT related to rate refunds is inconsistent with a negotiated settlement between AEP East and its customers and that the Commission improperly ordered refunds for rate years outside the scope of this proceeding.[12]

---

Part I (7.0.0) (Formula Rate Template).

[10] PJM, OATT ATT H-14A, OATT Attachment H-14A – AEP East (5.1.0) (Protocols); PJM, OATT ATT H-14B Part I, OATT Attachment H-14B Part I - AEP East Companies (9.0.0).

[11] Formal Challenge Order, 186 FERC ¶ 61,033 at P 4.

[12] *See* AEP East Request for Rehearing at 1-4, 23-24.

## III. Motion to Reopen the Record

9. On April 29, 2024, AEP East filed a motion to reopen the record and motion to lodge three IRS private letter rulings (PLR) obtained by certain American Electric Power, Inc. (AEP) subsidiaries, and a motion to hold its compliance filing proceeding in abeyance.

10. On July 12, 2024, the Commission granted AEP East's motion to reopen the record and lodge the AEP subsidiary PLRs.[13] The Commission reopened the record for the limited purpose of accepting into the record three PLRs dated March 8, 2024,[14] and to allow the parties in this proceeding an opportunity to address the application of the PLRs to the facts in this proceeding.[15] The Commission explained that AEP East had established extraordinary circumstances warranting reopening the record because the newly issued PLRs relate to AEP subsidiaries and discuss the treatment of ADIT resulting from tax allocation arrangements similar to those at issue in this proceeding.[16] The Commission recognized that PLRs are fact specific and that other parties to this proceeding have not had an opportunity to submit analysis and evidence in response to AEP's interpretation of the PLRs.[17] Accordingly, the Commission established additional briefing procedures to allow the parties in this proceeding to present written analysis and evidence to address the application of the PLRs to the facts in this proceeding.[18]

11. On August 12, 2024, AEP East timely filed a brief addressing the applicability of the PLRs in response to the Briefing Order. On September 10, 2024, Joint Customers timely filed a reply brief. On September 30, 2024, AEP East filed an answer, motion to respond, and limited response to Joint Customers' reply brief. On October 15, 2024, Joint Customers filed an answer in opposition to AEP East's motion to respond.

---

[13] *Appalachian Power Co.*, 188 FERC ¶ 61,037 (2024) (Briefing Order).

[14] IRS PLR 105952-22 (Mar. 8, 2024) (Motion attach. A); IRS PLR 107770-22 (Mar. 8, 2024) (Motion attach. B); IRS PLR 105951-22 (Mar. 8, 2024) (Motion attach. C).

[15] Briefing Order, 188 FERC ¶ 61,037 at P 1.

[16] *Id.* P 17.

[17] *Id.* P 18.

[18] *Id.*

## IV. AEP East Compliance Filing

12. AEP East states that, consistent with the directives in the Formal Challenge Order, its Compliance Filing includes proposed revisions to the Formula Rate billings of each AEP East Company for: (1) the 2021 rate year to reflect the exclusion of the disputed input net operating loss adjustments and, for informational purposes, ADIT treatment related to rate refunds, as well as calculations of interest; and (2) the 2019 and 2020 rate years related to the Commission's rulings on ADIT treatment related to rate refunds, as well as calculations of interest.[19] Additionally, AEP East states that the Compliance Filing includes an exhibit detailing the investments related to CIAC (Attachment D).

13. Notice of the AEP East Compliance Filing was published in the *Federal Register*, 89 Fed. Reg. 20959 (Mar. 26, 2024), with interventions or protests due on or before April 8, 2024.

14. On March 29, 2024, American Municipal Power, Inc. filed a motion requesting an extension of time to April 22, 2024, to submit comments. On April 4, 2024, a notice granting American Municipal Power, Inc.'s motion was issued. On April 22, 2024, Joint Customers filed a protest to the Compliance Filing and on May 10, 2024, AEP East filed an answer.

## V. Discussion

### A. Procedural Matters

15. Rule 213(a)(2) of the Commission's Rules of Practice and Procedure prohibits an answer to a protest or answer unless otherwise ordered by the decisional authority.[20] We accept AEP East's answers to Joint Customers' reply brief and to Joint Customers' protest because they provided information that assisted us in our decision-making process.

### B. Substantive Matters

#### 1. Rehearing

##### a. Formal Challenge Order

16. As relevant to AEP East's request for rehearing, in the Formal Challenge Order, the Commission granted Joint Customers' Formal Challenge and Complaint as to the

[19] Compliance Filing at 1-2.

[20] 18 C.F.R. § 385.213 (2024).

disputed ADIT inputs to the Formula Rate adjustments.[21] The Commission found that AEP East failed to demonstrate the justness and reasonableness of its adjustments to its ADIT inputs to rate base for the 2021 rate year to implement its new method for allocating net operating loss carryforward ADIT.[22] The Commission found that AEP East's new methodology for allocating net operating loss carryforward ADIT for each of the AEP East companies for ADIT inputs to rate base in the Formula Rate was inconsistent with the Commission's "stand-alone" allocation method because it did not satisfy the Commission's "benefits and burdens test."[23]

17. The Commission explained that in order to determine the income taxes attributable to the individual members of a consolidated group, the Commission uses a "benefits and burdens test," which allocates those tax benefits to offset expenses whose burden was borne by the individual member's ratepayers.[24] The Commission stated that under the Commission's "stand-alone" allocation method, a utility's "tax allowance should not be based on the activities of others in the affiliated group but instead, like other costs, should be based on the activities of the [entity] itself."[25] In this regard, the Commission explained that the stand-alone allocation method, in effect, looks beneath the single consolidated tax liability and analyzes each of the deductions used to reduce the group's tax liability to determine the deductions applicable to each jurisdictional service.[26] The stand-alone method then allocates to each jurisdictional service those deductions that were generated by expenses incurred in providing that service.[27]

18. The Commission therefore determined that AEP East's adjustments to its ADIT inputs to rate base for the 2021 rate year to implement its new method for allocating net operating loss carryforward ADIT resulted in unjust and unreasonable allocation of ADIT

---

[21] Formal Challenge Order, 186 FERC ¶ 61,033 at P 40.

[22] *Id.*

[23] *Id.* P 41.

[24] *Id.* P 11 (citing *City of Charlottesville v. FERC*, 774 F.2d 1205, 1217 (D.C. Cir. 1985)).

[25] *Id.* P 12 (quoting *Columbia Gulf Transmission Co.*, Opinion No. 173, 23 FERC ¶ 61,396, at 61,875, *reh'g denied*, 24 FERC ¶ 61,258 (1983), *aff'd sub. nom. City of Charlottesville*, 774 F.2d 1205).

[26] *Id.* P 42.

[27] *Id.* (citing Opinion No. 173, 23 FERC at 61,852-53).

for its ADIT inputs to rate base in the Formula Rate.[28] The Commission noted that each AEP East company had fully utilized all of its federal net operating loss carryforwards on the AEP consolidated tax return as of December 31, 2020, and therefore no net operating loss ratemaking adjustments for the 2021 rate year were necessary or appropriate.[29] The Commission directed AEP East to exclude the disputed input net operating loss adjustments and to provide refunds with interest on all amounts improperly collected for the 2021 rate year, which are to be reflected as adjustments in the Annual Update for the next Rate Year.[30]

19. The Commission also granted Joint Customers' Formal Challenge on the ADIT related to rate refunds.[31] The Commission found that because the underlying refund amounts associated with the ADIT asset recorded in Account 190 are not included in rate base, the associated ADIT asset and excess or deficient ADIT should not be included either.[32] The Commission directed AEP East to exclude the ADIT asset that is related to refund amounts that are excluded from rate base and to provide refunds with interest on all amounts improperly collected for the 2019 and 2020 rate years, which are to be reflected as adjustments in the Annual Update for the next Rate Year.[33]

### b. <u>Net Operating Loss Carryforward Adjustments</u>

#### i. <u>AEP East's Request for Rehearing</u>

20. AEP East argues on rehearing that the Commission improperly ignored AEP East's arguments that the remedy requested by Joint Customers would likely lead to the IRS finding that AEP East violated the IRS normalization rules.[34] AEP East argues that the Commission's directives in the Formal Challenge Order will result in a violation of

---

[28] *Id.*

[29] *Id.* P 47.

[30] *Id.* P 48.

[31] *Id.* P 54.

[32] *Id.*

[33] *Id.*

[34] *See* AEP East Request for Rehearing at 6-9.

the deferred tax rules of section 1.167(l)-1(h)[35] of the IRS regulations.[36] AEP East asserts that the IRS regulations, and the PLRs interpreting the regulations, "require that the effects of a [net operating loss carryforward] must be taken into account for normalization purposes, and that it is necessary to include in the rate base the full amount of the [net operating loss carryforward], given the inclusion in rate base of the full amount of the deferred liability resulting from accelerated depreciation."[37] AEP East also argues that the Formal Challenge Order would violate section 168(i)(9)(B) of the IRS regulations because the Formal Challenge Order "would increase ADIT and reduce rate base because of affiliate income, meaning that there is an inconsistent procedure that is used to estimate or project tax expense, depreciation expense, reserve for deferred taxes and rate base."[38]

21. AEP East also argues that the Formal Challenge Order is inconsistent with Commission precedent and policy.[39] AEP East asserts that the Formal Challenge Order incorrectly determined that AEP East "improperly 'exclud[ed] tax benefits realized on a consolidated basis.'"[40] AEP East argues that the Commission's logic is inconsistent with the requirements of *Columbia Gulf*.[41] AEP East contends that the net operating loss carryforward adjustments are a timing issue and that AEP East will provide the benefits of the net operating losses generated as a result of the deductions to its customers, but the question is when.[42] AEP East states that the Formal Challenge Order is inconsistent with the benefits and burdens test because AEP East has not received a tax benefit—other entities have.[43] AEP East argues that when AEP East can receive a tax benefit for its own income for the net operating losses, it will appropriately record that benefit for

---

[35] 26 C.F.R. § 1.167(l)-1(h) (2024).

[36] AEP East Request for Rehearing at 8.

[37] *Id.*

[38] *Id.*

[39] *See id.* at 10-18.

[40] *Id.* at 12 (quoting Formal Challenge Order, 186 FERC ¶ 61,033 at P 44).

[41] *Id.* (citing Opinion No. 173, 23 FERC at 61,396).

[42] *Id.* at 14.

[43] *Id.*

ratemaking purposes and that benefit will then be passed onto ratepayers.[44] AEP East contends that in concluding that AEP East did not appropriately follow the Commission's stand-alone policy, the Formal Challenge Order failed to meaningfully address cases cited by AEP East and misstated the import of the main case the Commission relied upon.[45]

22. AEP East asserts that the Commission improperly ignored substantial factual disputes raised by the parties and should establish hearing procedures to address the outstanding factual issues.[46] AEP East argues that the Commission ignored: (1) whether AEP East is implementing a separate return methodology, (2) whether adopting the approach advocated by Joint Customers would result in a violation of the IRS normalization rules, and (3) what benefit, if any, has AEP East received by filing a consolidated return, and whether that benefit was only realized by AEP East by virtue of the AEP tax allocation agreement.[47]

**ii. <u>AEP East's Initial Brief on Applicability of PLRs</u>**

23. In response to the Briefing Order, which allowed "the parties in this proceeding an opportunity to present written analysis and evidence to address the application of the PLRs to the facts in this proceeding,"[48] AEP East argues that the "tax laws and factual circumstances that the IRS considered in evaluating the PLRs are identical to those issues in this proceeding."[49] AEP East contends that the IRS's conclusions in the PLRs

---

[44] *Id.*

[45] *Id.* at 15-18 (citing *New England Power Co.*, Opinion No. 49-C, 25 FERC ¶ 61,009 (1983); *Kern River Gas Transmission Co.*, Opinion No. 486, 117 FERC ¶ 61,077 (2006), *on reh'g*, 123 FERC ¶ 61,056 (2008), *on reh'g*, Opinion No. 486-B, 126 FERC ¶ 61,034 (2009), *on reh'g*, Opinion No. 486-C, 129 FERC ¶ 61,240 (2009), *on reh'g*, Opinion No. 486-D, 133 FERC ¶ 61,162 (2010); *Sys. Energy Res. Inc.*, Opinion No. 375, 60 FERC ¶ 61,131 (1992) (*SERI*)).

[46] *Id.* at 18-21, 25.

[47] *Id.* at 20.

[48] Briefing Order, 188 FERC ¶ 61,037 at P 18.

[49] AEP East Initial Brief at 13.

demonstrate that the methodology set forth in the Formal Challenge Order will result in a violation of the IRS's normalization rules.[50]

24. AEP East argues that although the impetuses for the PLRs were disputes before retail commissions, the tax laws and facts presented apply here.[51] AEP East asserts that the PLRs specifically state that the IRS was not analyzing state-level ratemaking policies and that the tax laws analyzed by the IRS in the PLRs do not change among jurisdictions.[52] AEP East states that the stand-alone methodology and the resulting ratemaking adjustments analyzed in the PLRs are the same as the adjustments at issue in this proceeding.[53] AEP East also states that the tax allocation agreement analyzed in the PLRs is the exact same as the tax allocation agreement at issue in this proceeding.[54]

25. AEP East asserts that when applying the PLRs to the facts of this proceeding, the PLRs hold that ratemaking adjustments are needed to re-instate a net operating loss deferred tax asset at the utility level, even where the net operating loss deferred tax asset is used by the affiliates on the consolidated return and the utility is paid for its use by virtue of a tax allocation agreement. AEP East states that the Formal Challenge Order requires AEP to exclude those adjustments for ratemaking purposes in the annual update; and therefore, if the Formal Challenge Order is not modified, AEP East would be committing a normalization violation.[55]

26. AEP East argues that in the Formal Challenge Order the Commission directed AEP East to exclude the ADIT adjustments from its Formula Rate because "AEP East fail[ed] to demonstrate the justness and reasonableness of its adjustment to its ADIT inputs to rate base for the 2021 rate year to implement its new method for allocating net operating loss carryforward ADIT."[56] AEP East argues that because the PLRs make it clear that excluding the disputed ADIT inputs will lead to a normalization violation, there is no basis for the Commission to continue to find that AEP East has not demonstrated

---

[50] *Id.*

[51] *Id.* at 13-14.

[52] *Id.* at 14 (citing IRS PLR 105952-22 at 12; IRS PLR 107770-22 at 13; IRS PLR 105951-22 at 12).

[53] *Id.*

[54] *Id.* at 14-15.

[55] *Id.* at 15-16; *see also id.* at 16-19.

[56] *Id.* at 19 (quoting Formal Challenge Order, 186 FERC ¶ 61,033 at P 48).

the justness and reasonableness of the adjustments at issue.[57] AEP East argues that the Commission must keep tax considerations concerning normalization violations in mind when examining ADIT.[58]

27. AEP East argues that the Commission regularly makes ratemaking determinations that align with the IRS's normalization rules.[59] AEP East also argues that while PLRs are not binding on the Commission, the Commission has found that "[t]he IRS, not the Commission . . . should be the party interpreting the Internal Revenue Code."[60] AEP East contends that "when the IRS ruling in a PLR indicates a violation will occur, the Commission change[s] course to ensure the utility will not violate that guidance."[61] AEP East also asserts that the Commission's "customary approach has been to consider the IRS's normalization rules and ultimately make its ratemaking determinations consistent with those requirements."[62] AEP East argues that forcing a normalization violation to occur, and thereby causing AEP East to lose its eligibility to utilize accelerated depreciation, would be unjust and unreasonable, and in direct contradiction with Commission policy, as it would deny ratepayers substantial economic benefits.[63]

---

[57] *Id.*

[58] *Id.* at 19-20 (quoting *Enbridge Pipelines (KPC)*, 100 FERC ¶ 61,260, at P 152 (2002)), *order on reh'g*, 102 FERC ¶ 61,310 (2003)).

[59] *Id.* at 20 (citing *Enbridge Pipelines (KPC)*, 100 FERC ¶ 61,260 at P 170; *Koch Gateway Pipeline Co.*, 74 FERC ¶ 61,088 at 61,277, *order on reh'g*, 75 FERC ¶ 61,132 (1996), *remanded on other issues sub nom. Exxon Corp. v. FERC*, 114 F.3d 1252 (D.C. Cir. 1997)).

[60] *Id.* (quoting *PJM Interconnection, L.L.C.*, 156 FERC ¶ 61,200, at P 18 (2016)).

[61] *Id.* at 20-21 (citing *Ameren Ill. Co.*, 163 FERC ¶ 61,200, at P 9 (2018); *Koch Gateway Pipeline Co.*, 74 FERC at 61,276-77; *see also El Paso Nat. Gas Co.*, 44 FERC ¶ 61,073, at 61,206-07 (1988)).

[62] *Id.* at 21-22 (citing *Enbridge Pipelines (KPC)*, 100 FERC ¶ 61,260 at P 170; *Koch Gateway Pipeline Co.*, 74 FERC at 61,277).

[63] *Id.* at 23.

### iii. Joint Customers' Reply Brief on Applicability of PLRs

28. Joint Customers argue that the facts the IRS relied upon in making the determinations in the PLRs differ materially from the facts underlying the Formal Challenge Order.[64] Joint Customers argue that the Commission should therefore affirm the Formal Challenge Order or direct AEP East to seek a PLR specific to the proceedings before the Commission.[65]

29. Joint Customers assert that PLRs are fact specific and that "a PLR issued in response to a request from one taxpayer 'may not be relied on as precedent when dealing with other taxpayers or IRS personnel.'"[66] Joint Customers argue that there is no dispute that AEP East has not sought or received PLRs that address the facts specific to the ADIT ratemaking adjustments that AEP East used to calculate its wholesale transmission rates.[67] Joint Customers dispute AEP East's contention that "[t]he tax laws and factual circumstances that the IRS considered in evaluating the PLRs are identical to those at issue in this proceeding."[68] Joint Customers argue that their Formal Challenge was not based principally on the argument that AEP East's ADIT ratemaking adjustments were inappropriate due to the fact that AEP East received payments under the tax allocation agreement.[69] Instead, Joint Customers assert that they challenged the net operating loss carryforward ADIT ratemaking adjustments resulting from AEP East's use of the separate return methodology because they were inconsistent with the Commission's stand-alone method and the benefits and burdens test.[70]

30. Joint Customers contend that the Formal Challenge Order did not direct AEP East to exclude the disputed ADIT adjustments due to AEP East's receipt of payments under the tax allocation agreement, but instead "places sole focus on the income tax deductions generated by expenses included in the cost-of-service rate, consistent with the Commission's long-standing ratemaking practice of matching the tax benefit to the

---

[64] Joint Customers' Reply Brief at 1-2, 23-32.

[65] *Id.* at 2.

[66] *Id.* at 24 (quoting Hodgson Supp. Aff. at 5:3-4)).

[67] *Id.*

[68] *Id.* at 25 (quoting AEP East Initial Brief at 13-14).

[69] *Id.* at 26.

[70] *Id.* at 26-27.

expense included in the cost of service."[71] Joint Customers assert that in the Formal Challenge Order, the Commission based its conclusion on the stand-alone method and the benefits and burdens test.[72] Joint Customers assert that in the Formal Challenge Order the Commission found that AEP East's ratepayers should receive the full benefit of the tax savings realized by AEP East, but that the proposed adjustments denied its ratepayers those benefits, which is inconsistent with the Commission's benefits and burdens test.[73] Joint Customers argue that at no time did the Commission in the Formal Challenge Order concern itself with the "variable" underlying the IRS's determination in the PLRs—the payments under the tax allocation agreement.[74] Joint Customers instead argue that the Commission's ratemaking under the stand-alone method "is solely concerned with the expenses included in the cost-of-service rate and the associated tax benefits generated by those expenses."[75] Accordingly, Joint Customers contend that the PLRs are distinct because the IRS focused on the payments under the tax allocation agreement while the Commission did not find the tax allocation agreements determinative in the Formal Challenge Order.[76]

31. Joint Customers argue that the PLRs are not relevant because the ratemaking treatment in the retail ratemaking PLRs were based on the prohibited separate return methodology rather than the Commission's stand-alone method.[77] Joint Customers assert that the PLRs state that the ratemaking calculations were done using the separate return methodology.[78] Joint Customers argue that this distinction is significant because it is unlikely that the IRS would reach the same conclusion for the ratemaking treatment specified in the Formal Challenge Order.[79] Joint Customers also argue that the PLRs address an issue that is not relevant or applicable to these proceedings because the PLRs focused on the payments under the tax allocation agreement, but the Formal Challenge

---

[71] *Id.* at 28.

[72] *Id.* at 28-29.

[73] *Id.* at 29.

[74] *Id.*

[75] *Id.*

[76] *Id.* at 29-30.

[77] *Id.* at 30.

[78] *Id.* at 30-31 (quoting PLR 105952-22 at 3; PLR 107770-22 at 3).

[79] *Id.* at 31-32.

Order did not direct AEP East to exclude the net operating loss carryforward ADIT due to the payments under the tax allocation agreement.[80] Joint Customers argue that this is material because the Commission's stand-alone method does not introduce the "variables" underlying the IRS's findings, i.e., the profits of affiliates or the payments under the tax allocation agreement.[81] Joint Customers assert that the ratemaking facts relevant to the AEP subsidiaries' retail rate proceedings and addressed in the PLRs are not applicable to the Commission's transmission rates at issue here because they involve different material facts.[82]

32. Joint Customers argue that to the extent the retail PLRs are relevant, the PLRs only address a sub-set of ADIT adjustments at issue.[83] According to Joint Customers, the retail PLRs discuss the normalization rules in the context of book-tax timing differences related to accelerated depreciation, but AEP East's net operating loss carryforwards that were utilized by affiliates on the consolidated tax return resulted from both AEP East's accelerated depreciation deductions and their deductions other than accelerated depreciation. Joint Customers assert that the PLRs confirm that the IRS normalization rules do not apply to other book-tax timing differences, and therefore "there is no basis for finding that the IRS's tax normalization rules require inclusion of [net operating loss carryforward] ADIT [deferred tax asset] ratemaking adjustments resulting from other book-tax timing differences."[84] Joint Customers therefore assert that "for purposes of the 2021 AEP East's [annual transmission revenue requirement (ATRR)] calculations, AEP East's book balances of [net operating loss carryforward deferred tax assets] for other book-tax timing differences of zero are the proper ADIT inputs."[85] Joint Customers also contend that AEP East's 2021 ATRR calculations included ratemaking adjustments for unprotected ADIT deficiencies for other book-tax timing differences.[86] Joint Customers assert that the PLRs demonstrate that the Formal Challenge Order will not result in a violation of the IRS normalization rules from the Formal Challenge Order's requirement that the stand-alone net operating loss carryforward adjustments applicable to other book-

---

[80] *Id.* at 32.

[81] *Id.*

[82] *Id.*

[83] *Id.* at 33-34.

[84] *Id.*

[85] *Id.* at 34.

[86] *Id.*

tax timing differences be eliminated.[87] Joint Customers therefore request that to the extent the Commission modifies some aspect of the Formal Challenge Order, the Commission "should continue to require AEP East to exclude all stand-alone ratemaking adjustments applicable to the [net operating loss carryforward] for other book-tax timing differences from the 2021 ATRR calculations that were utilized by affiliates on the AEP consolidated tax return."[88]

33. Joint Customers also request that, if the Commission does not affirm the Formal Challenge Order, the Commission direct AEP East to seek a PLR specifically related to the proceedings before the Commission.[89] Joint Customers assert that the IRS's safe harbor provisions would apply here and would allow the Commission to affirm the Formal Challenge Order and modify it, if necessary, pending a ruling from the IRS specifically related to the Commission's ratemaking policies without threatening AEP East's ability to use accelerated depreciation.[90]

#### iv. AEP East's Reply to Joint Customers' Reply Brief on Applicability of PLRs

34. AEP East argues that Joint Customers' reply brief includes no data, analysis, or expert testimony in support of their claims, many of which are made without citation.[91] AEP East states that the Commission has already rejected the notion that the facts evaluated in the PLRs are materially different than the facts at issue in this proceeding.[92] AEP East states that Joint Customers' assertion that the PLRs did not address facts specific to the net operating loss carryforward adjustments that AEP East used to calculate wholesale transmission rates is wrong.[93] AEP East also contends that Joint Customers' contention that the payments under the tax allocation agreement are irrelevant is factually incorrect.[94] AEP East argues that Joint Customers misread the

---

[87] *Id.* at 35.

[88] *Id.*

[89] *Id.* at 35-39.

[90] *Id.* at 36-39.

[91] AEP East's Reply Brief at 9.

[92] *Id.*

[93] *Id.* at 10.

[94] *Id.*

PLRs.[95] AEP East also argues that a Commission-specific PLR is unnecessary and the request merely repeats the incorrect argument that the PLRs are not relevant to this proceeding.[96] AEP East argues that its initial brief makes it clear that the adjustments were necessary to avoid an IRS normalization violation and that the Commission should find that including them in rates is just, reasonable, and appropriate.[97]

#### v. <u>Commission Determination</u>

35. The Commission's policy is to encourage utilities to use accelerated depreciation, which benefits ratepayers by providing the utilities with a cost-free source of capital.[98] In order to qualify for such accelerated depreciation, a company must adhere to IRS normalization rules concerning ADIT.[99] We are persuaded by AEP East's arguments on rehearing and in its further briefing that the Commission's directives in the Formal Challenge Order to exclude the protected net operating loss carryforward ADIT adjustments, i.e., those net operating loss carryforward ADIT adjustments related to accelerated depreciation,[100] will, under the IRS's PLRs, lead to a violation of the IRS's

---

[95] *Id.* at 11-12.

[96] *Id.* at 12-13.

[97] *Id.* at 14-15.

[98] *PJM Interconnection, L.L.C.*, 156 FERC ¶ 61,200 at P 12 ("The Commission's policy is to encourage utilities to use accelerated depreciation, because it provides the utility with cost free capital during the early years of the investment, which redounds to the benefit of utility customers. Taking accelerated depreciation benefits customers by lowering the utility's taxes, thereby providing the utility with cost-free capital for investment."); *Mich. Elec. Transmission Co., LLC*, 167 FERC ¶ 61,135, at P 2 (2019) ("Because the resulting balance in an ADIT account effectively provides the company with cost-free capital, the Commission generally requires a company to subtract the ADIT from rate base, thereby reducing customer charges."); *see also ITC Midwest LLC*, 154 FERC ¶ 61,188 (2016) (finding imprudent a utility's decision to opt out of bonus depreciation).

[99] *See Enbridge Pipelines (KPC)*, 100 FERC ¶ 61,260 at P 152 ("In order to continue to qualify for accelerated depreciation, a company must follow IRS normalization rules concerning ADIT.").

[100] Benefits associated with accelerated depreciation are subject to IRS normalization rules, whereby the tax benefits of accelerated depreciation received by public utilities in the early years of an asset's regulatory useful life may be passed on to customers no sooner than the depreciation of the underlying asset is reflected in rates, i.e., straight line depreciation over the useful life of the underlying asset used for ratemaking

normalization rules to the detriment of ratepayers. As discussed below, we find that AEP East has demonstrated the justness and reasonableness of its protected net operating loss carryforward ADIT adjustments to its ADIT inputs for the 2021 rate year to allocate protected net operating loss carryforward ADIT, as required under its Formula Rate Protocols.[101] Accordingly, we set aside the Formal Challenge Order, in part, and deny the Formal Challenge, in part, with respect to this issue.

36. In the Formal Challenge Order, the Commission addressed whether AEP East's net operating loss carryforward ADIT adjustments appropriately allocate to AEP East's customers the tax savings realized by the AEP holding company system as a result of filing a consolidated tax return for its member companies. Such savings are created because a consolidated tax return allows losses (tax deductions exceeding taxable income) of one or more members of the consolidated group to offset income received by other member companies for purposes of calculating group taxable income, reducing the group's income tax below what it would be if each member filed its own separate tax return. The savings result from use of deductions to reduce the group's income tax earlier than the deductions would otherwise have been used, and/or use of deductions that would have otherwise gone unused, by the individual members filing separately. In

---

(such timing differences between tax and ratemaking treatment of expenses are sometimes referred to as tax-book timing differences). *See Ala. Power Co.*, 167 FERC ¶ 61,073, at P 4 n.8 (2019). The difference between the tax dollars collected from customers but not yet paid by the utility to the IRS, due to the difference between straight line depreciation used for ratemaking and accelerated depreciation taken on the tax return, is reflected in ADIT balances (such ADIT resulting from IRS normalization rules applied to benefits associated with accelerated depreciation is referred to as protected ADIT). The IRS allows customers to receive the time value benefits of the tax dollars collected from customers but not yet paid by the utility to the IRS by reducing rate base by the ADIT associated with accelerated depreciation. The Commission has adopted normalization of the tax effects of tax-book timing differences associated with accelerated depreciation as well as the tax effects of other tax-book timing differences, finding that tax normalization matches tax benefits with cost responsibility, leading to fair and equitable results both to the regulated entities and to their customers. *See* Order No. 144, FERC Stats. & Regs. ¶ 30,254 at 31,522. The Commission requires that the time value of ADIT associated with normalization of tax-book timing differences be reflected in rates by adjusting rate base by ADIT balances. ADIT associated with tax-book timing differences of expenses unrelated to use of accelerated depreciation is not subject to IRS normalization requirements and is therefore referred to as unprotected ADIT. Treatment of AEP East's unprotected net operating loss carryforward ADIT adjustments are discussed *infra*.

[101] Protocols, § 5(f).

*Columbia Gulf*, the Commission held that under its stand-alone methodology, the regulated utility's ratepayers must be given the benefit of tax deductions (savings) where the customers were responsible for the expenses that gave rise to the deductions.[102]

37. To understand how AEP East's protected net operating loss carryforward ADIT adjustments differ from the Commission's stand-alone methodology, it is instructive to consider the Commission's discussion in *Columbia Gulf* of how the stand-alone methodology allocates consolidated tax savings to customers of a utility with net operating losses due to use of accelerated depreciation in the context of normalization of depreciation-related tax-book timing differences:

> "Assume that H, a holding company owns two subsidiaries: A, a gas pipeline, and B, an electric utility. In 1982 B puts into service a new generating unit. Because that new unit generates not only electricity but also a large amount of accelerated depreciation deductions, B's deductions exceed its income by $100. A, on the other hand, has taxable income of $100. A, B, and H file a consolidated return. The consolidated income is zero, so there is no consolidated tax liability. Because A would have had a $50 tax liability if separate returns had been filed, the filing of a consolidated return produces a tax savings of $50.
>
> In setting rates for B we would, following our normalization policy, calculate B's tax allowance on the assumption that tax deductions were taken on the basis of straight-line depreciation. And we would require B to accumulate in a deferred account the tax reducing effects of its excess deductions so that they will be available *to reduce its rate base now* and its tax allowance later.
>
> . . .The tax savings produced by B's excess deductions belong to B's future ratepayers, not A's current ratepayers. After all, it is B's future ratepayers who will pay the expense associated with the deductions." (emphasis added)[103]

In this example, B's customers begin to receive the time value of the benefits of B's excess deductions associated with use of accelerated depreciation *"now," i.e., as they are realized on the consolidated return*, through a reduction to rate base by the amount of ADIT associated with the tax reducing effects of the excess deductions, even though B would not yet have realized such benefits if it filed a separate tax return. In contrast, if B

---

[102] Opinion No. 173, 23 FERC at 61,852-53.

[103] *Id.* at 61,858-59.

had applied a net operating loss carryforward ADIT adjustment, similar to the adjustment proposed by AEP East, B's customers would not begin to receive the time value benefits of the excess deductions associated with use of accelerated depreciation as they are realized on the consolidated return, but instead would only begin to receive the time value benefits of such excess deductions associated with use of accelerated depreciation in later years when B has sufficient taxable income to offset such deductions carried forward in the calculation of the adjustment. In the meantime, the holding company system (A, B and H) would enjoy the time-value of the benefits of the excess deductions realized on the consolidated return. Thus, in the Formal Challenge Order, the Commission found that the net operating loss carryforward ADIT adjustments proposed by AEP East are inconsistent with the Commission's stand-alone methodology because it excludes from rates tax benefits that have been realized on a consolidated basis associated with deduction of expenses born by AEP East's customers.

38. While we continue to find that AEP's net operating loss carryforward ADIT adjustments are inconsistent with ratemaking treatment of consolidated tax benefits under the Commission's stand-alone methodology, we nevertheless find that the PLRs directed to the AEP subsidiaries provide strong support, which has not been rebutted, that the Commission's treatment of protected net operating loss carryforward ADIT in the Formal Challenge Order would result in a normalization violation. While the PLRs involved challenges raised in retail rate proceedings, the facts and issues addressed in the PLRs are substantially similar to the facts and issues that are before the Commission in this proceeding.[104] The PLRs state that the IRS is "not providing a ruling on the overall merits of [the state commission's] policies . . ." and state that the PLRs are "solely with respect to the four normalization elements relevant to depreciation-related ratemaking."[105] While Joint Customers argue that PLRs may not be relied on as precedent when dealing with other taxpayers or the IRS,[106] the Commission has found that PLRs can provide general guidance beyond the scope of the taxpayer requesting the ruling and has stated that "the legal and policy rationale behind the private letter rulings that have already been issued to other similarly situated utilities shows how the IRS

---

[104] *See* AEP East Initial Brief at 4-5 (stating, "the methodology used by the AEP subsidiaries was and is the same for each of the subsidiaries, whether at wholesale or retail") (citing Hodgson Supp. Aff. at 14).

[105] IRS PLR 105951-22 at 12; IRS PLR 105952-22 at 12; IRS PLR 107770-22 at 13.

[106] Joint Customers Reply Brief at 24.

interprets its regulations."[107] The IRS, not the Commission, should be the party interpreting the Internal Revenue Code.[108] Accordingly, we are unpersuaded by Joint Customers' arguments that the facts the IRS relied upon to make the determinations in the PLRs differ materially from the facts underlying the Commission's findings in the Formal Challenge Order.[109]

39. In the PLRs, the IRS determined that: (1) reducing AEP's protected net operating loss carryforward ADIT adjustment[110] by reason of the tax allocation payments would violate the deferred tax reserve computational rules of 26 C.F.R. § 1.167(l)-1(h)(2); (2) putting into effect a rate order that fails to take into account the protected net operating loss carryforward ADIT adjustment as a reduction to the total excess ADIT available to be amortized would result in a normalization violation; and (3) a final rate order that reduces AEP's protected net operating loss carryforward ADIT adjustment by reason of the tax allocation agreement payments would violate the depreciation normalization rules and result in the disallowance of AEP from claiming accelerated depreciation.[111]

40. Here, based on the IRS's determinations in the PLRs, we agree with AEP East that the Commission's directives in the Formal Challenge Order to exclude the protected net operating loss carryforward ADIT adjustments from rate base and protected excess ADIT available to be amortized will violate the IRS normalization rules as set forth in the PLRs. The Formal Challenge Order required AEP East to exclude from its ratemaking the

---

[107] *Indicated RTO Transmission Owners*, 161 FERC ¶ 61,018, at P 4 n.7 (2017) (quoting *Midcontinent Indep. Sys. Operator, Inc.*, 157 FERC ¶ 61,250, at P 25 (2016)).

[108] *PJM Interconnection, L.L.C.*, 156 FERC ¶ 61,200, at P 18 (2016).

[109] *See* Joint Customers' Reply Brief at 24-32. For similar reasons, we decline to direct AEP East to seek a PLR from the IRS that considers the facts specific to this proceeding as requested by Joint Customers. The PLRs are instructive on the issues before the Commission.

[110] The IRS in the PLRs referred to AEP's net operating loss carryforward ADIT adjustment as AEP's "stand-alone" deferred tax asset. Although the IRS uses terminology similar to that used in *Columbia Gulf*, the Commission found in the Formal Challenge Order that AEP East's net operating loss carryforward ADIT adjustment does not align with the Commission's use of the term "stand-alone." *See* Formal Challenge Order, 186 FERC ¶ 61,033 at PP 42-43.

[111] IRS PLR 105952-22 at 12-13; IRS PLR 105951-22 at 13; IRS PLR 107770-22 at 13.

disputed input net operating loss adjustments;[112] however, the IRS has made it clear in the submitted PLRs that reducing the protected net operating loss carryforward ADIT, including excess ADIT, by reason of payments under the tax allocation agreement would violate the IRS normalization rules.[113]

41. To require AEP East to exclude the protected net operating loss carryforward ADIT from ADIT inputs, in violation of the IRS's normalization rules as set forth in the PLRs, would jeopardize AEP East's ability to use accelerated depreciation in the future. The use of accelerated depreciation confers substantial economic benefits on ratepayers,[114] and the loss of accelerated depreciation methods would result in higher rates for AEP East's customers.[115] Given that these adjustments are necessary to comply with the IRS's normalization rules according to the PLRs and avoid the loss of accelerated depreciation, we find that AEP East has demonstrated the justness and reasonableness of its adjustments to its protected net operating loss carryforward ADIT, as required under its Formula Rate Protocols.[116]

42. Given the concern that excluding the protected net operating loss carryforward ADIT adjustments will, according to the IRS's PLRs, lead to a violation of the IRS's normalization rules, we will allow AEP East's protected net operating loss carryforward ADIT adjustments to ADIT inputs. While these adjustments delay the flow through of the time value of the benefits of accelerated depreciation to AEP East's transmission customers compared to the Commission's stand-alone methodology, the adjustments are necessary to comply with the IRS's interpretation of its normalization rules and thus ultimately benefit such customers by allowing AEP East to continue to use accelerated depreciation in this instance. The Commission generally is reluctant to take action that would endanger a utility's right to favorable tax treatment from the IRS (i.e., the ability to take accelerated depreciation).[117] In circumstances such as these, the Commission has

---

[112] Formal Challenge Order, 186 FERC ¶ 61,033 at PP 40, 48.

[113] IRS PLR 105952-22 at 10-13; IRS PLR 105951-22 at 10-13; IRS PLR 107770-22 at 11-13.

[114] *Arkla Energy Res.*, 43 FERC ¶ 61,302, at 61,828, *order on reh'g*, 44 FERC ¶ 61,085 (1988).

[115] *See ITC Midwest LLC*, 154 FERC ¶ 61,188 at P 57, *order on reh'g*, 155 FERC ¶ 61,247 (2016).

[116] Protocols, § 5(f). We clarify, however, that this finding does not abrogate or overturn the Commission's stand-alone methodology.

[117] *See Koch Gateway Pipeline Co.*, 74 FERC at 61,277.

declined to apply established ratemaking policy in order to follow the IRS's interpretation of its normalization rules so that the utility could continue to qualify for accelerated depreciation.[118]

43. However, not all of the disputed ratemaking adjustments at issue in this proceeding relate to protected ADIT.[119] For the unprotected net operating loss carryforward ADIT adjustments that do not relate to accelerated depreciation,[120] we continue to find that AEP East has failed to demonstrate the justness and reasonableness of these adjustments. As the IRS noted in the PLRs, the IRS's normalization rules "do not pertain to other book-tax timing differences with respect to state income taxes, F.I.C.A. taxes, construction costs, or any other taxes and items."[121] We are unpersuaded by AEP East's arguments on rehearing that the Commission misapplied its stand-alone methodology and its benefits and burdens test in addressing the ratemaking adjustments for unprotected ADIT.[122] Unlike the ratemaking adjustments for protected ADIT related to accelerated depreciation, the adjustments for unprotected ADIT are not required to avoid a normalization violation. AEP East's ratemaking treatment of ADIT that does not relate to accelerated depreciation must therefore comport to the Commission's stand-alone method and must satisfy the Commission's benefits and burdens test.[123]

---

[118] *Enbridge Pipelines (KPC)*, 100 FERC ¶ 61,260 at PP 152, 170 (allowing an increase in rate base resulting from an acquisition to be included in rates without a showing that such an increase benefits the pipeline's customer, where the increase was due to a reduction in ADIT resulting from the tax treatment of the acquisition and the increase in rate base was necessary to comply with the IRS's interpretation of its normalization rules) (citing *Koch Gateway Pipeline Co.*, 74 FERC at 61,276).

[119] *See* AEP East Answer at 12 & n.53 (recognizing that $12.7 million, or 1.5% of the adjustments in dispute do not relate to accelerated depreciation).

[120] *See supra* note 100.

[121] IRS PLR 105952-22 at 9; IRS PLR 105951-22 at 9; IRS PLR 107770-22 at 9.

[122] *See* AEP East Request for Rehearing at 10-18.

[123] The Commission has previously allowed utilities to deviate from the Commission's rate base averaging ratemaking conventions for plant-related ADIT balances associated with accelerated depreciation in order to allow the utilities to follow the IRS normalization rules applicable to such plant-related ADIT, while continuing to follow the Commission's rate base averaging ratemaking conventions for other ADIT balances. *See, e.g.*, *Public Service Co. of Colorado*, 155 FERC ¶ 61,028 at P 38 (2016).

44. Under the Commission's benefits and burdens test, "the benefits of consolidated tax savings are given to ratepayers (by reducing the jurisdictional affiliate's tax allowance) if they bore the burden of paying the deductible expenses that generated the savings."[124] The Commission's stand-alone method does not ignore the consolidated return or the tax reducing benefits the group realizes by filing such a return, and unlike the separate return methodology, the stand-alone policy "looks beneath the single consolidated tax liability and analyzes each of the deductions used to reduce the group's tax liability to determine the deductions for which each service is responsible. It then allocates to the jurisdictional service those deductions which were generated by expenses incurred in providing that service."[125]

45. The Formal Challenge Order correctly notes that the benefits realized by consolidated tax savings must be captured, for ratemaking purposes, when other affiliates can use the net operating losses to offset their own income.[126] Despite AEP East's arguments to the contrary, this is consistent with the benefits and burdens test. AEP East's customers have borne the burden of paying the expenditures that gave rise to AEP East's unprotected net operating loss carryforward ADIT adjustments and must therefore receive the benefits realized on the consolidated return resulting from those deductions, whose tax savings are reflected in the payments AEP East receives under the tax sharing agreement.[127]

---

[124] *City of Charlottesville*, 774 F.2d at 1208.

[125] Opinion No. 173, 23 FERC at 61,852-53.

[126] Formal Challenge Order, 186 FERC ¶ 61,033 at P 42.

[127] *See City of Charlottesville*, 774 F.2d at 1208. As explained in the Formal Challenge Order, where the allocation of consolidated tax liability under tax sharing agreements among affiliates does not follow the Commission's benefits and burdens test, the tax sharing payments under those agreements does not dictate the allocation of consolidated tax liability for Commission ratemaking purposes. Formal Challenge Order, 186 FERC ¶ 61,033 at P 46; Opinion No. 173, 23 FERC at 61,864-65. In this proceeding, there is no dispute that the tax sharing payments that AEP East receives reflect the savings that the consolidated group realizes from netting taxable income contributed by some members of the group against the net operating losses contributed by AEP East. We note that the tax sharing agreement, in this instance, facilitates the application of the benefits and burdens test and, consistent with precedent, simply corroborates application of the Commission's long-standing ratemaking policy.

46. As it pertains to the unprotected ADIT, we disagree with AEP East's contentions that the Formal Challenge Order is inconsistent with *Columbia Gulf* and *City of Charlottesville*, where AEP East contends that "the consolidated return *did not* impact the appropriate tax allowance for the jurisdictional entity because the losses in question came from other companies."[128] In *Columbia Gulf*, the Commission found the "[a]pplication of our stand-alone policy to the facts of this case results in some of the tax reducing benefits the Columbia group realizes from filing a consolidated return being used to reduce the pipelines' tax allowances."[129] The Commission held that since the return for the pipelines used the parent's interest expense as the pipelines' cost of debt—and the pipeline's ratepayers therefore bore the burden of paying the parent's interest expense—the pipeline's tax allowance should reflect a portion of the consolidated tax savings created by the parent's loss.[130] The Commission contrasted this to other deductions on the consolidated tax return that were related to expenses of separate gas development companies not included in the pipelines' cost-of-service. Therefore, because the pipeline's ratepayers were not responsible for the expenses of the gas development companies, the tax savings on the consolidated return that were generated by those expenses were not passed on to the pipeline.[131] Here, since AEP East's customers have borne the burden of paying the deductible expenses that gave rise to AEP East's unprotected net operating loss carryforward ADIT adjustments, the benefits of such expenses realized on AEP's consolidated tax return should be passed on to AEP East's customers.

47. The Formal Challenge Order is also consistent with the precedent cited by AEP East. For example, *New England Power Co.* involved the proper treatment of reduced income tax requirements realized by a utility as a result of a consolidated tax return filed by the utility's parent company.[132] The central question before the Commission was whether the expenses that generated the parent company's deduction were recovered in the utility's cost-of-service.[133] The Commission stated that if expenses generating the deduction were recovered in the utility's cost-of-service, then the tax savings should be

---

[128] AEP East Request for Rehearing at 12-13 (citing Opinion No. 173, 23 FERC ¶ 61,396 at 61,852).

[129] Opinion No. 173, 23 FERC at 61,853.

[130] *Id.*

[131] *Id.*

[132] *New England Power Co.*, 25 FERC at 61,050.

[133] *Id.* at 61,052.

passed on to the utility's ratepayers.[134] The record demonstrated that the expenses were not claimed as a cost-of-service item in the utility's rates, and therefore under the policy set forth in *Columbia Gulf*, the deductions and tax savings should not be taken into account in determining the utility's tax allowance.[135] Although the tax savings were not ultimately passed to the utility's ratepayers, this was because the utility's ratepayers did not bear the expense that generated the savings.[136] Here, the central question before us is the same—whether the expenses that generated AEP's unprotected net operating loss carryforward ADIT adjustments were borne by AEP East's customers. Since they were, the tax savings realized on the consolidated tax return because of these expenses, whose corresponding consolidated return tax savings are reflected in the payments AEP East receives under the tax sharing agreement, should be passed on to AEP East's customers.[137]

48. Additionally, AEP East asserts that in *Kern River Gas* the Commission "focused on the impact of the [net operating loss] on the company on a stand-alone basis, rather than on the impact of the [net operating loss] on its corporate parent."[138] *Kern River Gas* is inapposite because it did not involve the allocation of tax savings resulting from Kern River's parent company using the net operating losses to offset income on a consolidated tax return. Instead, the Commission addressed whether Kern River was entitled to include deferred income taxes related to tax net operating loss in its rate base.[139]

49. Finally, we disagree with AEP East's contention that *SERI* supports its position "because it (1) teaches to disregard the losses and gains of members of the consolidated group, which is precisely what AEP East did, and (2) instructs that a tax sharing

---

[134] *Id.*

[135] *Id.*

[136] *Id.* The Commission noted that the deductions derived from two types of expenses: (1) the parent company's corporate and fiscal expenses such as the cost of meetings, annual reports, officers' salaries, and the like; and (2) interest expense on the parent company's debt. Neither of these expenses were claimed as a cost-of-service item in the utility's rates. *Id.*

[137] *See id.* (stating that if the expenses giving rise to the deduction are recovered in the utility's cost-of-service, "the tax savings should be passed on to [the utility's] ratepayers.").

[138] AEP East Request for Rehearing at 17 (citing *Kern River Gas*, 117 FERC ¶ 61,077).

[139] *Kern River Gas*, 117 FERC ¶ 61,077 at P 224.

agreement does not determine the proper application of the stand-alone methodology, which is what AEP East has continuously argued."[140] SERI, a subsidiary of Entergy Corporation, Inc., had financed and constructed the Grand Gulf nuclear power plant, and generated no operating income during the plant's construction period, during which SERI borrowed to finance construction of the plant. The interest on borrowed funds totaling some $1.8 billion caused SERI to incur large net tax operating losses during the construction period, which were available and were used as deductions to reduce income and thus to reduce the overall consolidated tax liability to essentially zero. In *SERI*, the Commission affirmed and adopted the Initial Decision, which held that in order for SERI's accounting to be just and reasonable, its ratepayers must receive the benefits flowing from the costs incurred in providing jurisdictional service.[141] Indeed, the Initial Decision determined that SERI's accounting for Allowance For Funds Used During Construction (AFUDC) was not just and reasonable since the cost burdens borne by SERI's customers (interest expenses)[142] were not matched with the benefits realized on the consolidated tax returns.[143] The Commission further confirmed that the seminal principle of *Columbia Gulf* was that the benefits and burdens test requires that ratepayers be given the benefit of tax reductions resulting from deductible expenses which they bear in rates.[144] Since SERI's ratepayers bore the interest expense used as a tax deduction on the consolidated return, the Commission found that SERI's ratepayers must receive the tax benefit of those interest deductions.[145] Again, here, because AEP East's customers

---

[140] AEP East Request for Rehearing at 17-18 (citing *SERI*, 60 FERC at 61,475, 61,477) (footnote omitted)).

[141] *SERI*, 60 FERC at 61,474.

[142] The AFUDC amounts are capitalized and become a part of the company's net investment and are recovered in rates through depreciation over the life of the property.

[143] SERI, 60 FERC at 61,474.

[144] *Id.* at 61,476.

[145] *Id.* SERI's accounting for AFUDC had reflected the tax benefit of the interest deductions that SERI had received through payments under tax sharing agreements with its affiliates. Those payments reflected savings resulting from the use SERI's net operating losses on the consolidated tax return net of certain unused investment tax credits of SERI's affiliates. The issue the Commission ruled upon was whether SERI's accounting, by reflecting savings resulting from the use its net operating losses on the consolidated tax return net of the value of the unused investment tax credits of SERI's affiliates, fully reflected the benefits of SERI's net operating losses consistent with the Commission's benefits and burdens test. *SERI*, 60 FERC at 61,471, 61,474-475. As explained in the Formal Challenge Order, the Commission determined in *SERI* that the

bore the expenses related to AEP's unprotected net operating loss carryforward ADIT adjustments, they must receive the benefit of the tax savings realized on AEP's consolidated tax return from the deduction of those expenses, whose corresponding consolidated return tax savings are reflected in the payments AEP East receives under the tax sharing agreement. AEP East's unprotected net operating loss carryforward adjustments do not provide the tax savings benefits realized on the consolidated tax return to its customers. Accordingly, the determination in the Formal Challenge Order that AEP East's ADIT rate adjustments that does not relate to accelerated depreciation do not meet the Commission's benefits and burdens test is consistent with Commission precedent. We continue to find that AEP East has not demonstrated the justness and reasonableness of its unprotected net operating loss carryforward ADIT adjustments to its formula rate ADIT inputs as required under its Formula Rate Protocols, and we continue to grant the Formal Challenge on this issue.[146]

50. Based on these findings, AEP East must submit a compliance filing within 60 days of the date of this order showing the amount of its net operating loss carryforward ADIT adjustments associated with unprotected ADIT, including supporting calculations and workpapers of such amounts. In such compliance filing, AEP East is directed to detail all of the calculations of the Formula Rate Billings for the 2022 Annual Update, revised to reflect the Commission's findings discussed above with regard to amounts relating to AEP's protected and unprotected net operating loss carryforward ADIT adjustments, as well as calculations of interest. In accordance with section 6 of the Protocols, we also direct AEP East to provide refunds with interest on all amounts improperly collected for

---

tax sharing agreements among affiliates did not follow the Commission's benefits and burdens test, and therefore the tax sharing payments under those agreements were not determinative in setting the taxes reflected in ratemaking. Formal Challenge Order, 186 FERC ¶ 61,033 at P 46.

[146] We also are unpersuaded by AEP East's request to establish hearing procedures to address alleged disputed issues of material fact. *See* Request for Rehearing at 20-21, 25. The Commission is not obligated to conduct a trial-type evidentiary hearing, even if there are disputed issues of material fact, if the issues can be adequately resolved on the written record. *Entergy Nuclear Operations, Inc.*, 112 FERC ¶ 61,117, at P 50 (2005); *see also Blumenthal v. FERC*, 613 F.3d 1142, 1144 (D.C. Cir. 2010) (choice to hold an evidentiary hearing is generally discretionary); *Woolen Mill Assoc. v. FERC*, 917 F.2d 589, 592 (D.C. Cir. 1990) (mere allegations of disputed fact are insufficient to mandate a hearing). Here, no such issues exist because the Commission is able to resolve the issues on the record before us.

the 2021 rate year, and for such refunds to "be reflected as adjustments in the Annual Update for the next Rate Year."[147]

### c. ADIT Related to Rate Refunds

51. We continue to grant Joint Customers' Formal Challenge on the ADIT related to rate refunds. However, we set aside the Formal Challenge Order, in part, and modify the directives in the Formal Challenge Order to require AEP East to provide refunds with interest on all amounts improperly collected for the 2021 rate year.

#### i. AEP East's Request for Rehearing

52. AEP East argues that in granting the Formal Challenge to AEP East's inclusion of ADIT related to rate refunds in rate base, the Commission failed to address the settlement agreement that resulted in the rate treatment in question.[148] AEP East asserts that "[t]he allocation of ADIT based on the AEP East Companies transmission functional books is the result of a negotiated settlement between AEP East and their customers, including the Joint Customer Group."[149] AEP East submits that the Formal Challenge Order does not discuss the implications of the settlement before concluding that ADIT related to rate refunds must be excluded from rate base.[150]

53. AEP East also contends that, if the Commission's exclusion of ADIT related to rate refunds is correct, the Commission erred in ordering "refunds with interest on all amounts improperly collected for the 2019 and 2020 rate years."[151] AEP East asserts that Joint Customers only challenged the inclusion of ADIT related to rate refunds for the 2021 rate year.[152] AEP East argues that refunds for the 2019 and 2020 rate years are outside the scope of the Formal Challenge and that section 5(d) of the Protocols prohibits

---

[147] PJM Interconnection, L.L.C., Intra-PJM Tariffs, OATT ATT H-14A, OATT Attachment H-14A - AEP East, § 6 (5.1.0) (AEP East Operating Companies). PJM Interconnection, L.L.C., Intra-PJM Tariffs, OATT ATT H-20A, OATT Attachment H-20A – AEPTCo, § 6 (1.1.0) (AEP East Transmission Companies).

[148] AEP East Request for Rehearing at 21-23.

[149] *Id.* at 22.

[150] *Id.*

[151] *Id.* (quoting Formal Challenge Order, 186 FERC ¶ 61,033 at P 54).

[152] *Id.*

Joint Customers from raising issues with the 2019 or 2020 rate years.[153] AEP East submits that section 5(d) of the Protocols prohibits retroactive relief for 2019 and 2020 since those years are outside the scope of the Formal Challenge.[154]

### ii. Commission Determination

54. We continue to find that because the underlying refund amounts associated with the ADIT asset recorded in Account 190 are not included in rate base, the associated ADIT asset should not be included either. AEP East argues that the Formal Challenge Order "provides no discussion of the implications of AEP East's settlement before concluding that ADIT related to rate refunds may not be included in rate base."[155] However, neither the general use of transmission functional books in worksheet WS B-1 – Actual Stmt. AF (WS B-1) and WS B-2 – Actual Stmt. AG (WS B-2), nor the specific settlement approved by the Commission, explicitly require this treatment. While AEP East's Formula Rate does functionalize costs, WS B-1 and WS B-2 permit the exclusion of "non-applicable" or "non-utility" costs, allowing AEP East to exclude ADIT related to rate refunds. The Commission previously has ruled, in an order pertaining to AEP West,[156] that ADIT relating to refunds must be excluded because the underlying refund amounts associated with the ADIT asset recorded in Account 190 are not included in rate base.[157] AEP East has not demonstrated that it is entitled to different treatment than AEP West. Thus, the AEP East Companies have not supported the inconsistent treatment of ADIT.

---

[153] *Id.* at 22-23. AEP East asserts that section 5(d) of the Protocols prohibits Joint Customers from raising issues with the 2019 or 2020 rate years as of the time of Joint Customers' Formal Challenge. *Id.* at 23 (citing PJM, Intra-PJM Tariffs, OATT ATT H-14A, OATT Attachment H-14A - AEP East (5.1.0), § 5d).

[154] *Id.* at 23 (citing *E. Tex. Elec. Coop., Inc. v. FERC*, 90 F.4th 579, 588 (D.C. Cir. 2024)).

[155] *Id.* at 22.

[156] AEP West includes the AEP West Operating Companies (Southwestern Electric Power Company and Public Service Company of Oklahoma) and the AEP West Transmission Companies (AEP Oklahoma Transmission Company and AEP Southwestern Transmission Company, Inc.).

[157] *Sw. Power Pool, Inc.*, 178 FERC ¶ 61,208, at PP 64-65 (2022), *aff'd sub nom.*, *E. Tex. Elec. Coop., Inc. v. FERC*, 90 F.4th 579 (issue of ADIT related to refunds was not appealed).

55. We agree with AEP East that Joint Customers only challenged the inclusion of ADIT related to rate refunds for the 2021 rate year and that refunds for the 2019 and 2020 rate years are outside the scope of the Formal Challenge.[158] Accordingly, we set aside the Formal Challenge Order, in part, and direct AEP East to submit a compliance filing, within 60 days of the date of this order, detailing all of the calculations of the revised Formula Rate Billings for the 2022 Annual Update, as well as calculations of interest. We also direct, in accordance with section 6 of the Protocols, refunds with interest on all amounts improperly collected for the 2021 rate year, and for such refunds to be "reflected as adjustments in the Annual Update for the next Rate Year."

### 2. Compliance

#### a. ADIT Treatment Related to Net Operating Losses and Net Operating Loss Carryforwards

##### i. Formal Challenge Order

56. The Commission directed AEP East on compliance to detail all of the calculations of the Formula Rate billings for the 2022 Annual Update to reflect the exclusion of the disputed input net operating loss adjustments, as well as calculations of interest.[159]

##### ii. AEP East's Compliance Filing

57. AEP East states that it removed all of the disputed net operating loss adjustments from the Formula Rate. AEP East asserts that while it is complying with the directives in the Formal Challenge Order, it reserves the right to modify its compliance if the Formal Challenge Order is modified.[160]

##### iii. Commission Determination

58. As discussed above, we modify the discussion in the Formal Challenge Order, set aside the order in part, and direct AEP East to submit a further compliance filing within 60 days of the date of this order, with regard to AEP's protected and unprotected net

---

[158] Protocols, § 5(d) ("Failure to pursue an issue through a Preliminary Challenge or to lodge a Formal Challenge regarding any issue as to a given Annual Update shall bar pursuit of such issue with respect to that Annual Update, but shall not bar pursuit of such issue or the lodging of a Formal Challenge as to such issue as it relates to a subsequent Annual Update.").

[159] Formal Challenge Order, 186 FERC ¶ 61,033 at P 48.

[160] Compliance Filing at 1-3.

operating loss carryforward ADIT adjustments.[161] Accordingly, we find AEP East's Compliance Filing as to net operating loss ADIT adjustments moot and therefore reject it.

**b. ADIT Treatment Related to Rate Refunds**

**i. Formal Challenge Order**

59. The Commission directed AEP East on compliance to detail all of the calculations of the Formula Rate billings for the 2020 and 2021 Annual Updates to reflect the exclusion of the disputed ADIT related to rate refunds, as well as calculations of interest.[162]

**ii. AEP East's Compliance Filing**

60. AEP East states that it removed all of the disputed ADIT related to rate refunds from the Formula Rate. AEP East asserts that while it is complying with the directives in the Formal Challenge Order, it reserves the right to modify its compliance if the Formal Challenge Order is modified.[163]

**iii. Commission Determination**

61. As discussed above, we are unpersuaded by AEP's rehearing request concerning ADIT related to rate refunds.[164] However, we set aside the Formal Challenge Order with respect to the 2019 and 2020 rate years. Accordingly, we accept the AEP East Compliance Filing as to ADIT related to rate refunds for the 2021 rate year and reject the refunds related to the 2019 and 2020 rate years. As such, in the compliance filing ordered below, we direct AEP East to revise the ADIT related to rate refunds in the Formula Rate for the 2019 and 2020 rate years.

**c. ADIT Treatment Related to Contributions in Aid of Construction**

**i. Formal Challenge Order**

62. Joint Customers challenged AEP East's inclusion of ADIT associated with CIAC in the AEP East 2021 ATRR for the respective AEP East Operating Companies and AEP

---

[161] *See supra* PP 35-50.

[162] Formal Challenge Order, 186 FERC ¶ 61,033 at P 54.

[163] Compliance Filing at 1-4.

[164] *See supra* P 54.

East Transmission Companies, which they argued overstated the overall transmission revenue requirement for AEP East by $934,161.[165]

63. The Commission stated that it was unclear from the record whether the underlying CIAC (e.g., asset) is similarly functionalized to transmission, how AEP East accounts for CIAC on its books, and whether these practices are consistent with Commission precedent.[166] The Commission also noted that the settlement approved by the Commission does not explicitly mention CIAC. Accordingly, the Commission directed AEP East to further explain the mechanics of how it includes CIAC-related ADIT and excess or deficient ADIT in its Formula Rate and to demonstrate who the contributors or the customers of the CIACs are, such as whether the facilities under the CIAC agreements are open access network transmission facilities, distribution facilities, or generator interconnection facilities, and why network integration transmission service customers would be allocated excess or deficient tax amounts for expenditures on facilities which may not be used for open access transmission service. Finally, the Commission directed AEP East to further explain the interaction of any crediting mechanism with CIAC-related ADIT and excess and deficient ADIT.[167]

### ii. <u>AEP East's Compliance Filing</u>

64. AEP East explains that its treatment of ADIT related to CIAC is the result of negotiated settlements, approved by the Commission on October 1, 2010 in Docket No. ER08-1329 and on April 21, 2011 in Docket No. ER10-355.[168] As such, AEP East states that it uses the amount of ADIT on each company's transmission functional books and that AEP East tracks all CIAC received by work order. AEP East states that all CIAC received is recorded to Account 107 – Construction Work in Progress, which is ultimately closed to Account 101. Additionally, AEP East states that where CIAC is received for a transmission asset, the CIAC is ultimately reflected in transmission rate base as a reduction to the plant-in service balance and that CIAC causes only a temporary adjustment, meaning the difference between the book and tax amount changes over time, but will ultimately be the same once the asset is retired or exceeds its useful life.

---

[165] Formal Challenge and Complaint at 21.

[166] Formal Challenge Order, 186 FERC ¶ 61,033 at P 58 (citing *Ameren Ill. Co.*, 162 FERC ¶ 61,025 (2018) (*Ameren II*); *Midcontinent Indep. Sys. Operator, Inc.*, 168 FERC ¶ 61,093 (2019)).

[167] *Id.* (citing *PJM Interconnection, L.L.C.*, 177 FERC ¶ 61,085, at P 101 (2021)).

[168] Compliance Filing at 8 (citing *AEP Appalachian Trans. Co.*, 135 FERC ¶ 61,066, at P 1 (2011); *Am. Elec. Power Serv. Corp.*, 133 FERC ¶ 61,007, at P 1 (2010)).

65. AEP East states that when CIAC is received, it creates taxable income which is not treated as income for book purposes and that the increase to taxable income creates a timing difference between book and tax, resulting in a deferred tax asset. AEP East continues that, as the costs are recovered over multiple years, taxable income will be decreased, reducing the deferred tax asset. AEP East states that year over year, multiple CIAC transactions overlap for the company and result in accumulated timing differences.

66. AEP East states that details of the investments associated with assets underlying the CIAC ADIT balance are in Attachment D, which shows that for all CIAC ADIT recorded to the transmission functional ledger in 2021, the related work orders were all related to projects recorded to either Transmission or General Plant Accounts and thus were reflected in AEP East's transmission formula rates.[169]

### iii. Protest

67. Joint Customers state that AEP East has failed to identify the contributors of the CIAC and therefore AEP East's response is deficient.[170] Joint Customers argue that the Commission requires the exclusion of CIAC and CIAC-related ADIT from rates.

68. Joint Customers claim that the treatment of CIAC is different for taxes and for ratemaking, resulting in a permanent timing difference referred to as a deferred tax asset, because the Commission does not allow recognition of CIAC in income, plant-in-service, or depreciation expense.[171] Joint Customers argue that it would be inequitable to include CIAC-related ADIT deferred tax assets in transmission rate base and transmission rates for recovery from transmission customers when, under CIAC arrangements, the net present value of the public utility's income tax obligation has already been recovered and all CIAC has been excluded under Order No. 490 and the FERC Electric Plant Instruction, 2.D.

69. Joint Customers argue that AEP East confuses the issue of whether there is a crediting mechanism related to CIAC ADIT with other unrelated excess ADIT items, and that AEP East's response is therefore deficient.[172]

---

[169] Compliance Filing at 8-9 (citing Attachment D to the Compliance Filing).

[170] Joint Customers Protest at 2 (citing Formal Challenge Order, 186 FERC ¶ 61,033 at P 58; AEP East Compliance Filing at 8-9).

[171] *Id.* at 5-6 (citing 18 C.F.R. § 101 (2024), Uniform System of Accounts, Electric Plant Instructions, 2, Electric Plant To Be Recorded at Cost, para. D).

[172] *Id.* at 6-7 (citing Formal Challenge Order, 186 FERC ¶ 61,033 at P 58).

70. Joint Customers explain that the settlement agreements referenced by AEP East do not contain any provisions addressing the treatment of ADIT associated with CIAC, nor do they discuss the use of functional transmission books, and that AEP East is required to abide by ratemaking principles and only include items that support network transmission customers.[173] Joint Customers argue that there are no Commission-jurisdictional tariff provisions that authorize including CIAC payments received by the public utility in rate base and that it would therefore be inequitable to include such a CIAC ADIT deferred tax asset in rate base.

### iv. Answer

71. AEP East answers that it details the investments associated with assets underlying the CIAC ADIT balance in Attachment D to the Compliance Filing and that Attachment D shows that for all CIAC ADIT recorded to the transmission functional ledger in 2021, the related work orders are all related to projects recorded to either Transmission or General Plant Accounts.[174]

72. AEP East argues that Joint Customers' Protest is non-responsive to AEP East's Compliance Filing and that Joint Customers' Protest argues that ADIT related to CIAC can never be included in Commission-jurisdictional transmission rates.[175] AEP East explains that the Commission implicitly rejected such an argument in this proceeding by ordering further compliance on this issue and has explicitly rejected such a blanket proposition before where exclusion of disputed CIAC ADIT would be contrary to the formula rate.[176]

73. AEP East explains that the settlements provided that AEP East use its functional books to determine ADIT that would be included in the formula and that the CIAC-related ADIT is contained within its transmission functional books. AEP East states that, just like in *Ameren III*, AEP East's Formula Rate "require[s] inclusion of CIAC-related ADIT" because of how ADIT is treated due to the settlements.[177]

---

[173] *Id.* at 7-9 (citing Compliance Filing at 8).

[174] AEP East Answer at 2-3 (citing Formal Challenge Order, 186 FERC ¶ 61,033 at P 58; Compliance Filing at Attachment D).

[175] *Id.* at 3-4 (citing Joint Customers Protest at 2-6).

[176] *Id.* (citing *Ameren Ill. Co.*, 165 FERC ¶ 61,025, at P 10 (2018); *Ameren Ill. Co.*, 167 FERC ¶ 61,247, at P 32 (2019) (*Ameren III*)).

[177] *Id.* at 5 (citing *Ameren III*, 167 FERC ¶ 61,247 at P 32).

74. AEP East argues that it fully explained the interaction of any crediting mechanism with CIAC-related ADIT and excess and deficient ADIT because it explained the crediting in the context of remeasurement for the Tax Cuts and Jobs Act, but also explained that "[w]here CIAC is received for a transmission asset, the CIAC is ultimately reflected in transmission rate base as a reduction to the plant-in service balance."[178]

### v. Commission Determination

75. We find that AEP East has complied with the Commission's directive in the Formal Challenge Order to further "explain[] the CIAC-related ADIT calculations" in its Formula Rate.[179] Based on the record before us, including the structure of AEP East's Formula Rate, we find AEP East's treatment of CIAC-related ADIT to be inconsistent with Commission precedent and AEP East's Formula Rate. Accordingly, as discussed in detail below, we grant the formal challenge and direct AEP East to remove ADIT associated with CIAC from its 2021 ATRRs for the AEP East Operating Companies and AEP East Transmission Companies.

76. AEP East repeats the argument it made in its underlying pleadings that its treatment of CIACs is the product of settlements that functionalize transmission costs, which were accepted by the Commission in 2010 and 2011. As an initial matter, AEP East points to no provisions of these settlements to support its claim.[180] In any event, those settlements were superseded when AEP East filed rate cases in 2016 in the instant dockets, proposing to switch from a historical formula rate to a forward-looking formula rate, among other changes. The Commission set those filings for hearing and settlement judge procedures, and the parties settled on a new formula rate, which contained the ADIT worksheets at issue here, WS B-1 and WS-B-2. While AEP East's Formula Rate does functionalize costs, WS B-1 and WS B-2 also permit the exclusion of "non-applicable" or "non-utility" costs, which, as discussed below, allow AEP East to remove cost items that may not be borne by ratepayers. Accordingly, we next examine applicable precedent and how AEP East's Formula Rate allows it to remove CIAC-related ADIT from the calculation of the revenue requirement.

---

[178] *Id.* (citing Compliance Filing at 8).

[179] Formal Challenge Order, 186 FERC ¶ 61,033 at Ordering Paragraph (C). *See also id*. P 58.

[180] AEP East Answer at 4-5 (citing AEP East Companies Answer to Joint Customer Formal Challenge and Complaint, Docket Nos. ER17-405-000, et al., at 31-32 (Apr. 24, 2023)).

77. As the Commission held in *Trailblazer Pipeline Co.*:

> the contributor should bear the tax burden created as a result of its [CIAC]. In other words, "[i]f a contributor is to make a CIAC in order to gain services by which he is to benefit, the contributor should pay the full cost of the contribution, including its tax effect."[181]

Following a formal challenge against Ameren Illinois Company (Ameren Illinois), the Commission expanded upon the application of this precedent in the context of transmission formula rates. In *Ameren I*, the Commission stated that "it would be inappropriate for Ameren Illinois to include CIAC tax gross-up collections related to CIAC as a revenue credit in the transmission formula rate. Neither the ratepayer nor the shareholder should be affected by the taxes related to the collection of CIAC or related [CIAC] tax gross-up."[182]

78. In *Ameren II*, the Commission further explained that "neither the tax gross-up of CIAC nor the ADIT related to the tax gross-up of CIAC are allowed to be included in the ATRR. Both of these items arise from non-operating contributions by individual transmission customers, and should have no bearing on the ATRR."[183] However, Ameren Illinois' transmission formula rate functionalized the entire balance of its ADIT accounts, which included the ADIT for the CIAC gross-up, without any way to remove it. Accordingly, in *Ameren III*, the Commission clarified that, notwithstanding *Trailblazer*, requiring such removal in the context of a formal challenge "would result in a directive to change the formula rate template that the Commission did not intend."[184] As such, Ameren Illinois was allowed to continue including the ADIT for the CIAC gross-up because it was part of Ameren's filed rate. The same cannot be said for AEP East.

79. AEP East states that, just like in *Ameren III*, its Formula Rate "require[s] inclusion of CIAC-related ADIT."[185] We disagree. AEP East's Formula Rate does not require a change to properly exclude the ADIT related to CIAC, including the tax gross-up, from rates. AEP East's Formula Rate itemizes ADIT subaccounts in Column A of worksheets

---

[181] *Trailblazer Pipeline Co*., 55 FERC ¶ 61,050, at 61,150 (1991) (*Trailblazer*) (quoting *Transwestern Pipeline Co*., 45 FERC ¶ 61,116, at 61,362 (1988)).

[182] *Ameren Ill. Co.*, 156 FERC ¶ 61,209, at P 63 (2016) (*Ameren I*)).

[183] *Ameren II*, 162 FERC ¶ 61,025 at P 38.

[184] *Ameren III*, 167 FERC ¶ 61,247 at P 32.

[185] AEP Answer at 5 (citing *Ameren III*, 167 FERC ¶ 61,247 at P 32).

WS B-1 and WS B-2. Columns D and E, labeled "Non-Applicable/Non-Utility," specifically allow AEP East to remove this and other items that may not be charged to transmission customers. Indeed, AEP East already uses Columns D and E to remove such non-applicable or non-utility ADITs from its Formula Rate.[186] After these and several additional calculations are completed on worksheets WS B-1 and WS B-2, the final balances are shown on worksheet W-S B – ADIT & ITC (WS B). By contrast, Ameren Illinois' formula rate had no equivalent to worksheets WS B-1 and WS B-2 to itemize, and potentially remove, ADIT. Therefore, our holding in *Ameren II* applies here. AEP East may still collect CIAC and a CIAC gross-up from CIAC customers, but it may not include either in its Formula Rate.

The Commission orders:

(A) In response to the request for rehearing, the Formal Challenge Order is hereby modified and set aside, in part, as discussed in the body of this order.

(B) Joint Customers' Formal Challenge is granted in part and denied in part, as discussed in the body of this order.

(C) AEP East's Compliance Filing is hereby accepted in part, and rejected in part, as discussed in the body of this order.

(D) AEP East is hereby directed to submit a compliance filing, within 60 days of the date of this order, as discussed in the body of this order.

By the Commission.

( S E A L )

Carlos D. Clay,
Deputy Secretary.

---

[186] *See, e.g.*, Appalachian Power Company's formula rate template, WS B-1 – Actual Stmt. AF, columns D and E. Appalachian Power Company uses these columns to exclude some ADIT items, such as "ADIT Fed - Hedge-Foreign Exc 1900016" and "ADIT Fed - Non-UMWA PRW OCI 1900011."

# **Attachment B**

*Appalachian Power Co.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, 192 FERC ¶ 62,126 (September 2, 2025).

192 FERC ¶ 62,126
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

| | |
|---|---|
| Appalachian Power Company | Docket Nos. ER17-405-004 |
| AEP Appalachian Transmission Company Inc. | ER17-406-004 |
| American Municipal Power, Inc., *et al.*<br>v.<br>Appalachian Power Company *et al.*, and<br>AEP Appalachian Transmission Company Inc., *et al.* | EL23-51-003 |

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND PROVIDING FOR FURTHER CONSIDERATION

(September 2, 2025)

Rehearing has been timely requested of the Commission's order issued on June 30, 2025, in this proceeding. *Appalachian Power Co.*, 191 FERC ¶ 61,238 (2025). In the absence of Commission action on a request for rehearing within 30 days from the date it is filed, the request for rehearing may be deemed to have been denied. 16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713 (2025); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the request for rehearing of the above-cited order filed in this proceeding will be addressed in a future order to be issued consistent with the requirements of such section. As also provided in 16 U.S.C. § 825*l*(a), the Commission may modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper.

Debbie-Anne A. Reese,
Secretary.

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| AMERICAN MUNICIPAL POWER, INC., OLD DOMINION ELECTRIC COOPERATIVE, BLUE RIDGE POWER AGENCY, AND WABASH VALLEY POWER ASSOCIATION, INC. | ) | Case No. __________ |
| Petitioners, | ) | |
| v. | ) | |
| FEDERAL ENERGY REGULATORY COMMISSION, | ) | |
| Respondent. | ) | |

**CERTIFICATE OF SERVICE**

Pursuant to Rules 15(c) and 25 of the Federal Rules of Appellate Procedure and Rules 15(a) and 25 of the Circuit Rules for the United States Court of Appeals for the District of Columbia Circuit, I hereby certify that I have served a true and correct copy of the foregoing document, upon the Office of the Secretary and the Office of the Solicitor of the Federal Energy Regulatory Commission by U.S. Mail (and electronic mail) at the following addresses and by electronic filing via the FERC eFiling system:

Debbie-Anne A. Reese, Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

Robert H. Solomon, Solicitor
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426
robert.solomon@ferc.gov

Pursuant to 18 C.F.R. § 385.212 and 28 U.S.C. § 2112(a), I further certify that I will mail a date-stamped copy of this Petition for Review to the Office of the Secretary, Federal Energy Regulatory Commission, 888 First Street, N.E., Washington, D.C. 20426.

Pursuant to Federal Rule of Appellate Procedure 15(c) and in accordance with Rule 2010(f) of the Commission's Rules of Practice and Procedure (18 C.F.R. § 385.2010(f)), I further certify I have served all persons on the Commission's service lists in the underlying proceeding, Docket Nos. ER17-405, ER17-406, and EL23-51, attached hereto.

Respectfully submitted,

*/s/ Jason T. Gray*
Jason T. Gray
Duncan & Allen LLP
1730 Rhode Island Avenue,
NW, Suite 700
Washington, DC 20036
(202) 289-8400
jtg@duncanallen.com

Dated at Washington, D.C. this 28th day of October, 2025.

Service List for ER17-405-005, ER17-406-005, and EL23-51-004
Appalachian Power Company

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| AEP East Companies | William Keyser<br>Steptoe LLP<br>1330 Connecticut Avenue, NW<br>Washington, DISTRICT OF COLUMBIA 20036-1795<br>UNITED STATES<br>wkeyser@steptoe.com | |
| AEP East Companies | Shaun Boedicker<br>Steptoe LLP<br>1330 CONNECTICUT AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>sboedicker@steptoe.com | |
| AEP East Companies | Michelle Castaline<br>Steptoe LLP<br>Steptoe LLP<br>1300 CONNECTICUT AVE NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>mcastaline@steptoe.com | |
| AEP East Companies | John Crespo<br>Deputy General Counsel<br>American Electric Power Company, Inc.<br>1 Riverside Plaza<br>Columbus, OHIO 43215<br>UNITED STATES<br>jccrespo@aep.com | |
| AEP East Operating Companies | John Crespo<br>Deputy General Counsel<br>American Electric Power Service Corporation<br>1 Riverside Plaza<br>Columbus, OHIO 43215<br>UNITED STATES<br>jccrespo@aep.com | Stacey Burbure<br>American Electric Power Service Corporation<br>801 Pennsylvania Avenue, NW<br>Washington DC, DISTRICT OF COLUMBIA 20004<br>slburbure@aep.com |
| AEP East Operating Companies | Jessica Cano<br>Senior Counsel<br>American Electric Power Service Corporation | Christopher K. Duffy<br>Director Regulatory Services<br>American Electric Power Service Corporation |

| | | |
|---|---|---|
| | 1 Riverside Plaza<br>COLUMBUS, OHIO 43215<br>UNITED STATES<br>jacano@aep.com | 1 Riverside Plaza<br>Columbus, OHIO 43215<br>ckduffy@aep.com |
| AEP Intervenor Group | Robert Weishaar<br>McNees Wallace & Nurick LLC<br>1200 G Street, NW<br>Suite 800<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>bweishaar@mcneeslaw.com | |
| American Electric Power Service Corporation | Jessica Cano<br>Senior Counsel<br>American Electric Power Service Corporation<br>1 Riverside Plaza<br>COLUMBUS, OHIO 43215<br>UNITED STATES<br>jacano@aep.com | Hector Garcia<br>Senior Counsel - American Elec<br>American Electric Power Service Corporation<br>1 Riverside Plaza, 29th Floor<br>Columbus, OHIO 43215<br>hgarcia1@aep.com |
| American Municipal Power, Inc. | Gerit Hull<br>Deputy General Counsel - Regul<br>1111 Schrock Road<br>Suite 100<br>COLUMBUS, OHIO 43229<br>UNITED STATES<br>ghull@amppartners.org | Lisa G McAlister<br>Deputy General Counsel - FERC/<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>Columbus, OHIO 43229<br>lmcalister@amppartners.org |
| American Municipal Power, Inc. | | Christopher J Norton<br>Director of Market Regulatory<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>Columbus, OHIO 43229<br>cnorton@amppartners.org |
| American Municipal Power, Inc. | Gary Newell<br>Jennings, Strouss & Salmon, P.L.C.<br>1350 I Street, N.W.<br>Suite 810<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>gnewell@jsslaw.com | |
| BLUE RIDGE POWER AGENCY | Gary Newell<br>Jennings, Strouss & Salmon, P.L.C.<br>1350 I Street, N.W.<br>Suite 810 | |

| | | |
|---|---|---|
| | Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>gnewell@jsslaw.com | |
| BLUE RIDGE POWER AGENCY | Allen ONeil<br>Partner<br>McCarter & English, LLP<br>1301 K Street, N.W.<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>aoneil@mccarter.com | |
| BLUE RIDGE POWER AGENCY | Barry Cohen<br>Special Counsel<br>McCarter & English, LLP<br>1301 K Street, N.W.<br>Suite 1000 West<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>bcohen@mccarter.com | |
| Buckeye Power, Inc. | Marvin Griff<br>Partner<br>Thompson Hine LLP<br>1919 M Street, N.W.<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20036-1600<br>UNITED STATES<br>marvin.griff@thompsonhine.com | Kurt Helfrich<br>6677 Busch Boulevard<br>Columbus, OHIO 43229<br>khelfrich@ohioec.org |
| Buckeye Power, Inc. | Lija Kaleps-Clark<br>Buckeye Power, Inc.<br>6677 Busch Blvd<br>Columbus, OHIO 43229<br>UNITED STATES<br>lkaleps@ohioec.org | |
| Craig-Botetourt Electric Cooperative | Gary Newell<br>Jennings, Strouss & Salmon, P.L.C.<br>1350 I Street, N.W.<br>Suite 810<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>gnewell@jsslaw.com | |

| | | |
|---|---|---|
| Indiana and Michigan Municipal Distributors Association | Lisa Gast<br>Attorney<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1667 K ST NW STE 700<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>lsg@dwgp.com | Brenda Reyes<br>Legal Assistant<br>Duncan, Weinberg, Genzer & Pembroke, P.C.<br>1615 M Street, NW<br>Suite 800<br>Washington, DISTRICT OF COLUMBIA 20036<br>bvr@dwgp.com |
| Indiana Michigan Municipal Distributors Association | Gary Newell<br>Jennings, Strouss & Salmon, P.L.C.<br>1350 I Street, N.W.<br>Suite 810<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>gnewell@jsslaw.com | |
| Indiana Municipal Power Agency | Gary Newell<br>Jennings, Strouss & Salmon, P.L.C.<br>1350 I Street, N.W.<br>Suite 810<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>gnewell@jsslaw.com | Peter J. Prettyman<br>Sr. V.P. & General Counsel<br>Indiana Municipal Power Agency<br>11610 N COLLEGE AVE<br>CARMEL, INDIANA 46032<br>pprettyman@impa.com |
| Indiana Municipal Power Agency | Colten Mitchell<br>Staff Counsel<br>Indiana Municipal Power Agency<br>11610 North College Ave<br>Carmel, INDIANA 46032<br>UNITED STATES<br>coltenm@impa.com | |
| Indiana Utility Regulatory Commission | Brad Pope<br>Indiana Utility Regulatory Commission<br>101 W. Washington St., Suite 1500 E.<br>Indianapolis, INDIANA 46204<br>UNITED STATES<br>brpope@urc.in.gov | Beth E Heline, ESQ<br>General Counsel<br>Indiana Utility Regulatory Commission<br>Suite 1500 East<br>101 West Washington Street<br>Indianapolis, INDIANA 46204<br>BHeline@urc.in.gov |
| Indiana Utility Regulatory Commission | Steve Davies<br>Assistant General Counsel<br>Indiana Utility Regulatory Commission<br>101 W. Washington Street, Suite 1500 E<br>Indianapolis, INDIANA 46204<br>UNITED STATES<br>sdavies@urc.in.gov | |

| | | |
|---|---|---|
| Mishawaka Utilities | Gerit Hull<br>Deputy General Counsel - Regul<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>COLUMBUS, OHIO 43229<br>UNITED STATES<br>ghull@amppartners.org | |
| Monitoring Analytics, LLC | Jeffrey Mayes<br>General Counsel<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Valley Forge Corporate Center<br>Eagleville, PENNSYLVANIA 19403<br>UNITED STATES<br>jeffrey.mayes@monitoringanalytics.com | Joseph Bowring<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Valley Forge Corporate Center<br>Eagleville, PENNSYLVANIA 19403<br>UNITED STATES<br>joseph.bowring@monitoringanalytics.com |
| Monitoring Analytics, LLC | | Suzette N Krausen<br>Executive Assistant<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Valley Forge Corporate Center<br>Eagleville, PENNSYLVANIA 19403<br>UNITED STATES<br>suzette.krausen@monitoringanalytics.com |
| Old Dominion Electric Cooperative | Whit Williamson<br>Director - Power Supply<br>Thompson Coburn LLP<br>4201 Dominion Blvd<br>Glen Allen, VIRGINIA 23060<br>UNITED STATES<br>wwilliamson@odec.com | Rebecca L. Shelton<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>rshelton@thompsoncoburn.com |
| PJM Interconnection, L.L.C. | Pauline Foley<br>Assistant General Counsel<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd<br>Norristown, PENNSYLVANIA 19403<br>UNITED STATES<br>pauline.foley@pjm.com | |
| VIRGINIA DIVISION OF CONSUMER COUNSEL | | Charles Meade Browder, JR<br>Senior Assistant Attorney Gene<br>Virginia Office of Attorney General<br>202 N 9TH ST<br>RICHMOND, VIRGINIA 23219<br>mbrowder@oag.state.va.us |
| Wabash Valley | Jeremy Fetty | Randolph G Holt |

| | | |
|---|---|---|
| Power Association, Inc. | Parr Richey Obremskey & Morton<br>6702 Intech Blvd.<br>Indianapolis, INDIANA 46278<br>UNITED STATES<br>J_fetty@wvpa.com<br>jfetty@parrlaw.com | General Counsel<br>Parr Richey Obremskey Frandsen & Patterson LLP<br>6702 Intech Boulevard<br>Indianapolis, INDIANA 46278<br>r_holt@wvpa.com |
| Wabash Valley Power Association, Inc. | Gary Newell<br>Jennings, Strouss & Salmon, P.L.C.<br>1350 I Street, N.W.<br>Suite 810<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>gnewell@jsslaw.com | |
| Wabash Valley Power Association, Inc. | Randolph Holt<br>General Counsel<br>Parr Richey LLP<br>6702 Intech Boulevard<br>Indianapolis, INDIANA 46278<br>UNITED STATES<br>r_hold@wvpa.com | |